IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-1211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
by and through its personal representative Elizabeth Naranjo;

    Plaintiff,

v.

WELLPATH, LLC;
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO;
SHERIFF JOSEPH ROYBAL, in his official capacity;
ANTHONY LUPO, individually;
MICHELLE SILVA, individually;
MAKAYLA PATTERSON, individually;
JENNENE SCOTT, individually;

    Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT SCOTT'S MOTION TO DISMISS COMPLAINT AND JURY DEMAND [Doc. #27, filed 07/24/23]**

---

Plaintiff hereby submits this Response to Defendant Scott's Motion to Dismiss Complaint [Doc. #27] ("Motion"), and in support thereof states as follows:

### I. INTRODUCTION

On April 24, 2022, Mr. Canett went to the St. Francis Medical Center's Room ("ER") because he was in severe unexplained pain. He saw a triage nurse and was directed to wait for his physician evaluation in the ER waiting room. Mr. Canett had taken himself to this same ER ten days before, on April 14th, with complaints of ongoing right flank pain that had been persisting for two weeks. He was referred to PT and told to come back if his symptoms worsened. Complaint, Doc. No. 1, ¶¶ 37-38.

1

Back at the St. Francis ER on April 24th with persisting and worsening pain, and having been vomiting all that day, Mr. Canett sat in the ER waiting room wearing a plainly visible white hospital bracelet. Meanwhile, Defendant Sgt. Scott and other CSPD officers arrived at St. Francis in response to a call about a verbal argument Mr. Canett had with his sister, Elizabeth Naranjo, over who had the right to be using their shared car at the time. While discussing the car dispute, and hearing from Ms. Naranjo that she did not want to press any charges against her brother, Sgt. Scott learned that Mr. Canett had an outstanding warrant for an alleged "escape" from "ComCor" -- his halfway house. Mr. Canett had been in contact with ComCor about his need for medical care and his trip to the St. Francis ER, and he called ComCor and asked them to explain to Sgt. Scott that he had not "escaped." ComCor staff told Sgt. Scott that they did not mean to submit an "escape" warrant because they knew Canett was at the hospital. *Id*. ¶¶ 37-49.

Nevertheless, Sgt. Scott decided to arrest Mr. Canett inside the St. Francis ER waiting room. She had him handcuffed and forcibly removed from the hospital despite her knowledge that he had yet to be seen by a doctor or receive any treatment. After escorting Mr. Canett outside, Sgt. Scott returned to the waiting room, asked the ER Nurse-receptionist about Mr. Canett's status, and was told he was waiting to be seen by a doctor for his pain. Sgt. Scott baselessly responded that she didn't think Canett needed to be seen, but she would come back to discuss next steps. Sgt. Scott, a medically untrained lay person, had decided for herself that Mr. Canett was "med-seeking," or faking his medical condition to get drugs. *Id*. ¶¶ 50-57

Knowing the hospital would object to its patient being arrested without being evaluated for a medical emergency, Sgt. Scott did not return to the ER receptionist to discuss next steps. Instead, she instructed the hospital security guard, sitting outside the ER, to tell the Nurse-receptionist that Canett would not be back because he was going to jail. As a result, Mr. Canett never saw the ER

doctor he desperately needed to see, and he was never medically cleared for jail. His hospital records unequivocally explain that he "[l]eft without being seen." *Id*. ¶¶ 57-59.

It is deliberately indifferent for a police officer to play-act a healthcare provider and substitute their untrained medical judgments for those of ER nurses and doctors. It is deliberately indifferent for a police officer to decide that a man who has taken himself to the ER twice in ten days with a worsening medical crisis is, instead, faking to get drugs. Sgt. Scott's deliberate indifference would have fatal consequences, as Mr. Canett died approximately 26 hours later of a treatable ulcer, which later perforated, that could have easily been identified and treated at the ER had Sgt. Scott not unconstitutionally decided to play games with his life. *Id*. ¶¶ 59-62.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As long as Plaintiffs plead sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," they meet the threshold pleading standard. *Twombly*, 550 U.S. at 570. The "plausibility" standard requires only that relief plausibly follow from the facts alleged, not that the facts themselves be plausible. "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court's function on a 12(b)(6) motion is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003). The court must assume as true the well-pleaded facts "and draw all

reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "The district court's dismissal of a civil rights complaint on a 12(b)(6) motion is scrutinized with special care" with a strong presumption against entry of judgment against a plaintiff or dismissal of a claim. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994); *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999).

## III. ARGUMENT

### A. Plaintiff Estate has Plausibly Alleged Defendant Scott's Deliberate Indifference

This was no ordinary arrest. As alleged in great detail, Defendant Scott deliberately inserted herself into the middle of Mr. Canett's April 24th effort to get medical care for an ulcer that was causing him pain for weeks, now worsening significantly, and made him vomit all day. Rather than allow Canett the ER doctor evaluation he so desperately needed, Sgt. Scott decided Canett was faking his condition to get drugs. Sgt. Scott did not have any medical training, or any basis, for her personal opinion that Mr. Canett was "med-seeking." She did understand, however, how to speak to a very small and select group of St. Francis ER staff, in a particular order, to cause the St. Francis ER to release a very sick man before he could access the emergency medical care he needed to survive. Complaint, ¶¶ 37-62.

Defendant Scott does not argue that Mr. Canett's medical condition was not objectively serious. Motion, p. 2, 4-8. Mr. Canett's weeks-long battle with a worsening ulcer, causing him to go to the ER twice in ten days for very significant pain, and which ultimately perforated and killed him, is certainly a serious enough medical condition to meet the objective prong of the deliberate indifference analysis. *Cf. Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1310, 1315-16 (10th Cir. 2002) (reversing District Court on Defendant Officer's motion for summary judgment and holding

4

that a panic attack caused by an arrestee's obsessive-compulsive disorder, which took place in the police car on the way to jail, satisfied the objective component of the arrestee's deliberate indifference claim).

Defendant Scott also declines to argue that she lacked subjective knowledge of the tremendous medical risk she exposed Mr. Canett to by baselessly delaying his access to medical care and deciding he did not need medical clearance for jail. Motion p. 2, 4-8; Complaint, ¶¶ 37-42, 50-59. The Sergeant's conduct, and her deliberately sequential conversations with the ER Nurse-receptionist and ER security staff, respectively, indicate her understanding that she was doing something wrong when she substituted her untrained medical "opinions" for those of actual nurses and doctors, including the ER Nurse who triaged Mr. Canett and charted his blood pressure as 138/78, his respirations 18, his pulse a borderline tachycardic 99, and his 7-out-of-10 "severe pain." Complaint, ¶¶ 40-41. After being told by the ER Nurse-receptionist that Mr. Canett was waiting to be seen by a doctor, Sgt. Scott responded that she didn't think he needed to be seen for his back pain, and that she would come back to discuss next steps. *Id*. ¶¶ 50-53. She did not, in fact, come back to discuss next steps. *Id*. ¶¶ 54-58. Rather, she stepped back inside the sliding doors of the hospital, very briefly, to *tell the ER security guard* (who sits outside the ER) that Canett was not coming back and that *the guard needed to tell the Nurse* about this development. *Id*. ¶¶ 58-59. Notably, Sgt. Scott chose *not* to discuss next steps, as she had earlier promised to do, with any St. Francis ER nurse or doctor because she knew she would get pushback or outright refusal of her plan to remove a man from the ER before he could be seen by a doctor. *Id* ¶¶50-59. Sgt. Scott thus chose to delay Mr. Canett's access to ER medical care that would have found his worsening duodenal ulcer and treated him for it. This conduct is significantly stronger evidence of

subjective knowledge than that alleged in *Olsen* (and found sufficient to proceed to a jury on the Officer's motion for summary judgment). 312 F.3d at 1316-17.

Rather than contest the elements of the deliberate indifference claim, Sgt. Scott argues for dismissal by inventing a distinction between the types of legal persons covered by constitutional guarantees of adequate in-custody medical care. Motion p. 2, 4 ("[Mr. Canett's] designation as an arrestee instead of a pretrial detainee or one convicted of a crime is important to demonstrate that neither of [his] alleged avenues for relief are plausible."). Specifically, Defendant Scott seems to argue without relevant citation that pre-trial detainees *are* guaranteed constitutionally adequate medical care by the Fourteenth Amendment (and Colorado Constitution), but arrestees *are not*. Motion p. 4-6. This is simply wrong.[1] Arrestees, pre-trial detainees, and convicted prisoners *alike* are protected by the United States and Colorado constitutions from deliberately indifferent medical care while in custody.

*Olsen v. Layton Hills Mall*, discussed above, is one example of a defendant police officer subjected to potential liability for their deliberate indifference, between arrest and booking, to an arrestee's serious medical condition. *McCowan v. Morales* is another. In *McCowan*, an arrestee brought a deliberate indifference claim against the police officer for delaying his access to medical

---

[1] Defendant cites *Strain v. Regalado*, with emphasis on the phrase "pretrial detainees," in support of her 12(b)6 dismissal argument. This case offers no such support. Instead, the cited passage comes amidst a discussion of background law to support the holding that a purely objective standard will not be applied to a pretrial detainee's deliberate indifference claim. 977 F.3d 984, 989-993 (10th Cir. 2020). *Strain* does not discuss or hold anything related to the erroneous suggestion that only pretrial detainees, and not arrestees, are protected from deliberately indifferent medical care between arrest and booking. Sgt. Scott's citation to *Estate of Booker v. Gomez* is similarly inapposite, a discussion of background law by a court deciding if the Fourth or Fourteenth Amendment governs its excessive force analysis. 745 F.3d 405, 409, 420-21 (10th Cir. 2014). While the *Booker* court indeed defined Mr. Booker as a "pretrial detainee," it did not face, discuss, or hold anything remotely related to Sgt. Scott's hope that police officers cannot be liable for Fourteenth Amendment-violating deliberate indifference simply because the person they arrested was not yet legally a "pretrial detainee." *Id*.

care for his injured shoulders for up to 150 minutes between arrest and booking. 945 F.3d 1276, 1289-94 (10th Cir. 2019). Framing its analysis of this claim, the Tenth Circuit wrote: "As our starting point for considering this deliberate-indifference claim, **it is the Fourteenth Amendment that applies to McCowan's claim alleging the denial of medical care after his warrantless arrest and before he was taken to be booked into the county detention center**." *Id*. at 1290 (emphasis added) (citing *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 641, 647-49 (10th Cir. 2017). The *McCowan* court did not, as Sgt. Scott erroneously does in her Motion, distinguish between arrestees and pretrial detainees. It simply applied the well-settled constitutional principle that once arrested, a person (whether one labels them an "arrestee" or "pretrial detainee") is entitled to Fourteenth Amendment protection against inadequate medical care or delays in access to adequate medical care. *Id*. at 1289-95 (discussing *Olsen*, 312 F.3d at 1309-10, 1316-17); *see also Rife*, 854 F.3d at 644, 647-49 (applying Fourteenth Amendment to deny summary judgment to Defendant police officer on Plaintiff-arrestee's deliberate indifference claim).

Notice pleading requirements at the motion-to-dismiss stage do not mandate the use of certain magic words. Nor does this or any other Circuit's deliberate indifference case law make the form-over-substance distinction between "arrestees" and "pretrial detainees" that Sgt. Scott hopes to apply here. From the moment he was arrested in the St. Francis ER, Mr. Canett was protected by the Fourteenth Amendment and the Colorado Constitution from deliberate indifference to his serious medical needs. Sgt. Scott knew what she was doing when she interrupted Canett's ER admission for the life-threatening medical emergency he was then having. Complaint, ¶¶ 58-62. She just didn't believe, as she tried to stand in the shoes of an ER nurse or doctor, that Canett was telling the truth about his persisting and severe 7-out-of-10 pain. So, she unilaterally put a stop to Canett's ER evaluation and delayed his access to the life-saving medical care he

needed until it was too late. This is deliberate indifference and Sgt. Scott's efforts to escape discovery in this case should fail.

### B. This Court Should Retain Supplemental Jurisdiction

As this Court readily understands, it has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367. While the exercise of supplemental jurisdiction is discretionary, this Court should retain it here because the federal- and state-law claims derive from a common nucleus of operative fact and Plaintiff certainly expects to try them together in one case. Considerations of judicial economy, convenience, comity, and fairness to litigants all counsel this Court to retain jurisdiction over the state-law claim.

Discussing the history and development of modern supplemental jurisdiction, the U.S. Supreme Court explained in *Carnegie-Mellon University v. Cohill* that the post-*Gibbs* standard favors "a wide-ranging power" to exercise supplemental jurisdiction:

> [A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." The Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction. According to *Gibbs*, "considerations of judicial economy, convenience and fairness to litigants" support a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions.

484 U.S. 343, 348-349 (1988) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966) and noting that the *Gibbs* court found the old standard, as applied in lower courts, to be "unnecessarily grudging"). Tenth Circuit and District of Colorado courts are likewise no stranger to these decades-old principles, and they routinely exercise supplemental jurisdiction over cases like this one, where federal- and state-law claims cannot be reasonably or fairly split in two. *E.g.*, *Sigstedt v. Colorado Mt. Local Coll. Dist.*, No. 20-cv-2704-WJM-GPG, 2022 U.S. Dist. LEXIS 137255, *17-18 (D. Colo. Aug. 2, 2022) (retaining supplemental jurisdiction over plaintiff's state-law claims until

"[t]his case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment to Defendants on all of Plaintiff's federal law claims."); *see also Melville v. Third Way Ctr., Inc.*, No. 1:18-cv-1230-DDD-SKC, 2019 U.S. Dist. LEXIS 243332, *2-4 (D. Colo. Dec. 6, 2019) (retaining jurisdiction over state-law claims until all federal claims were dismissed).

Here, there is ample reason to keep this case together. This lawsuit arises from an approximately 26-hour long continuous course of deliberate indifference, and reckless assumptions of fakery, and delayed medical care for a man with a worsening and then perforating duodenal ulcer. Moreover, Plaintiff has plausibly alleged that Defendant Scott's reckless attitude towards Mr. Canett in the St. Francis ER, and her baseless opinions that he was "med seeking" and didn't need medical clearance for jail, were themselves transported with Mr. Canett to the El Paso CJC. At Sgt. Scott's direction, Ofc. Steinhardt drove Mr. Canett to jail. When they arrived, Ofc. Steinhardt repeated Sgt. Scott's recklessly false mantra that "there was no need" for Canett to have been medically cleared at the hospital. Complaint ¶¶ 51-52, 56-59, 63, 68. In fact, one of the people to whom Ofc. Steinhardt passed along Sgt. Scott's message of "no need for medical clearance" was Defendant LPN Michelle Silva, who met Steinhardt and Canett on arrival at the jail. Ofc. Steinhardt specifically told Defendant Silva that, while Canett was arrested at the ER, she did not have any medical paperwork for him because there was no need for medical clearance. *Id*. ¶¶ 63, 68. As such, the story of the final 26 hours of Mr. Canett's life is little different than many other jail deliberate indifference cases where multiple Defendants share a similarly reckless attitude, along with assumptions of malingering, and refuse to believe or respond to objective or subjective symptoms a life-threatening emergency.

Given the inherent continuity of this sequence of deliberately indifferent conduct, beginning with Sgt. Scott, continuing with LPN Silva and LPN Lupo, and ending with EMT Patterson, Plaintiff expects to and deserves to have her case adjudicated in one courtroom. Forcing Plaintiff to arbitrarily cleave this case in two and try each part in different forums would violate common sense notions of fairness to this litigant.[2] *Carnegie-Mellon Univ*, 484 U.S. at 350 ("As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.") (citation omitted).

Nevertheless, Sgt. Scott asks this Court to force an arbitrary, unfair, and inefficient process on this Plaintiff, relying on the principle of "comity" and the "novel or complex issue of state law" exception. Motion p. 3. While federal courts are required to consider values of judicial economy, convenience, fairness, and comity in deciding whether to keep federal- and state-law claims together, *Carnegie Mellon Univ.*, 484 U.S. at 350, the two cases Sgt. Scott relies on offer no support for splitting Plaintiff's claims up at the motion-to-dismiss stage. *Merrifield v. Bd. of County Comm'rs*, much like the instant case, began as a combination of § 1983 claims and a state law claim, all arising out of a fundamentally intertwined set of facts. 654 F.3d 1073, 1075-76 (10th Cir. 2011). Not until summary judgment, and in very large part because all federal claims were dismissed, did the court decline jurisdiction over the state-law claim. *Id*. 1075-76, 1085-86.[3]

---

[2] Judicial economy and convenience, while not at issue yet given that a potential trial in this case is very far away, are still factors this court should consider. Plaintiff's lawsuit includes both federal- and state-law claims, and there remains a very real possibility that a trial will be conducted on all of them. As such, the factors of judicial economy and convenience could come into play at a later stage of litigation and would then strongly argue for keeping all claims together. Thus, the common practice of federal courts -- to retain jurisdiction over an entire case until the possibility of trial on a combination of federal- and state-law has been foreclosed by dismissal -- is the best course of action here.

[3] *Ball v. Renner* is similarly unhelpful given the apples-to-oranges procedural comparison being

Unlike *Merrifield* and *Ball,* which were in radically different procedural postures when the respective decisions to decline supplemental jurisdiction were made, Plaintiff here has just begun litigation. Sgt. Scott's Motion to Dismiss, however, seeks a summary judgment-style decline of supplemental jurisdiction, as if all Plaintiff's federal claims have been dismissed and only the C.R.S. § 13-21-131 claim remains. This argument erroneously elevates the principle of "comity" above the equally important principles of judicial economy, convenience, and fairness to all litigants that drive the pendant jurisdiction analysis. That is not the law, and if applied here at the beginning of litigation, would amount to a return to the old and "unnecessarily grudging" pre-*Gibbs* rule. *Carnegie Mellon Univ.*, 484 U.S. at 348-349 (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)).

Not only does Defendant Scott's jurisdictional ask run counter to the teachings of *Gibbs*, *Carnegie-Mellon University*, and their many progeny, it is also unnecessary. Sgt. Scott suggests that a federal court cannot or should not analyze and apply appropriate legal standards to adjudicate a state-law claim involving a recently enacted statute. Motion p. 3-4. Federal courts, however, are already doing so with little trouble, including cases involving C.R.S. § 13-21-131. *E.g.*, *Est. of Ward v. Pueblo Cnty.*, No. 1:23-cv-473-CNS-MDB, 2023 U.S. Dist. LEXIS 128336, *27 n.7 (D. Colo. July 25, 2023). This court can easily and sensibly adopt the well-understood Fourteenth Amendment deliberate indifference standards and apply them to a Colorado Constitution-based deliberate indifference claim.

Although Plaintiff clearly meets the federal constitutional standard if applied, this Court is required "to engage in an independent analysis of state constitutional principles in resolving a state

---

made. 58 F.3d 664, 664-65, 668-669 ("Now that Ball's federal claim has dropped out of the picture, her state law claim of intentional infliction of emotional distress is no longer supplemental to any federal question claim.").

constitutional question." *People v. Young*, 814 P.2d 834, 842 (Colo. 1991). Often, the Colorado Supreme Court has "determined that the Colorado Constitution provides more protection for our citizens than do similarly or identically worded provisions of the United States Constitution," repeatedly recognizing "that the Colorado Constitution, written to address the concerns of our own citizens and tailored to our unique regional location, is a source of protection for individual rights that is independent of and supplemental to the protections provided by the United States Constitution."[4] *Id.* (collecting cases).

Defendant Scott's decision, to arrest Mr. Canett in the St. Francis ER waiting room, knowing that ER nurses had already decided he needed a full workup by an ER doctor for his weeks-long and worsening pain, was deliberately indifferent. So was her refusal to speak to the ER nurse who triaged Mr. Canett, or the ER doctor scheduled to evaluate him. So was her decision to disregard the ER-Nurse receptionist's information, her refusal to discuss next steps, and her instruction to the ER security guard to go tell that Nurse that she was taking Mr. Canett to jail despite the hospital's decision to have him worked up by an ER doctor. Complaint, ¶¶ 37-62. Additionally, this Defendant cannot be fairly separated from Defendants Silva, Lupo, and Patterson, and federal courts have more than enough decades of experience with Fourteenth

---

[4] For example, in *Young*, construing both Article II, sections 20 and 25, the Colorado Supreme Court determined that a death penalty statute violated the State's due process and cruel and unusual punishments clause. While *Young* did not explicitly hold that the state constitution's cruel and unusual punishment clause provides broader protection than the Eighth Amendment, the Court did hold that the Colorado death penalty statute, which was substantially similar to other states' death penalty statutes that had been upheld as constitutional under the Eighth Amendment by the Supreme Court of the United States, was unconstitutional under the Colorado Constitution. 814 P.2d at 842-43. The conclusion to be drawn from *Young*, when read in combination with the long history of the Supreme Court determining that the Colorado Constitution provides a greater source of protection for individual rights than the federal constitution, is that the state constitution's cruel and unusual punishments clause grants greater protection than the Eighth Amendment.

Amendment deliberate indifference law to effectively adjudicate a deeply intertwined state-law claim.

WHEREFORE, Plaintiff respectfully requests that Defendant Scott's Motion be denied in its entirety.

Respectfully submitted this 30th day of August 2023.

*/s/ Dan Weiss*
Dan Weiss
Anna Holland Edwards
Erica Grossman
HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
1437 High Street
Denver, CO 80218
dan@hheglaw.com

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Dan Weiss*
Dan Weiss

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August 2023, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

| | |
|---|---|
| Nathan J. Whitney | Brenda S. McClearn |
| Bryan E. Schmid | HALL BOOTH SMITH, P.C. |
| EL PASO COUNTY ATTORNEY'S OFFICE | BMcClearn@hallboothsmith.com |
| nathanwhitney@elpasoco.com | *Attorney for Defendants Wellpath, Silva &* |
| BryanSchmid@elpasoco.com | *Patterson* |
| *Attorneys for El Paso County Defendants* | |

| | |
|---|---|
| Ryan D. Doherty<br>COLORADO SPRINGS CITY ATTORNEY'S OFFICE<br>Ryan.doherty@coloradosprings.gov<br>*Attorney for Defendant Scott* | Paul A. Faraci<br>FARACI LEASURE, LLC<br>pfaraci@faracileasure.com<br>*Attorney for Defendant Lupo*<br><br>*/s/ Brooke Thiele-LaForest*<br>Brooke Thiele-LaForest, Paralegal |