IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 23-cv-01211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
by and through its personal representative Elizabeth Naranjo,

    Plaintiff,

v.

WELLPATH, LLC
SHERIFF JOSEPH ROYBAL, in his official capacity,
ANTHONY LUPO, individually,
MICHELLE SILVA, individually,
MAKAYLA PATTERSON, individually, and
JENNENE SCOTT, individually,

    Defendants.

## ORDER ON MOTIONS TO DISMISS

On April 24, 2022, Cristo Jesus Canett went to the emergency room at St. Francis Medical Center in Colorado Springs complaining of severe pain in his side and back. At the time, however, he had absconded from his community corrections program and a warrant was out for his arrest. Before he could be seen by a doctor, Colorado Springs police Sergeant Jennene Scott arrested Mr. Canett and took him from the hospital to the El Paso County Jail, where she told jail staff that he did not need medical screening or attention. Taking Sergeant Scott at her word, the jail did not provide him with any treatment. About 26 hours later, sometime after midnight on April 26, Mr. Canett died in his jail cell of a perforated duodenal ulcer.

- 1 -

Mr. Canett's estate then brought this suit, asserting three claims for relief against a variety of individuals and entities involved in his arrest and jailing. Doc. 1. The first is a federal constitutional claim against three individuals involved in Mr. Canett's treatment at the jail, and is not at issue in this order. *Id.* at 44-46. The second alleges that the policies and practices of Defendants Wellpath, LLC, and Sheriff Roybal[1] violated Mr. Canett's federal constitutional rights. *Id.* at 46-48. The third claim asserts a variety of violations of Colorado law and is brought against Sargeant Scott only in her individual capacity. *Id.* at 48-50. Sheriff Roybal and Sergeant Scott have moved to dismiss the claims against them. Docs. 27, 32. The motions are denied as explained below.

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's role is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted).

---

[1] Sheriff Roybal is named in his official capacity overseeing the jail for the County. Doc. 1 at 3–4. Claims against him are therefore treated as claims against the County itself. *Couser v. Gay* 959 F.3d 1018, 1022 (10th Cir. 2020). The complaint originally also named the Board of County Commissioners, but the parties have since agreed to dismiss the Board. Docs. 47, 48. Unless context requires otherwise, Sheriff Roybal and the County are treated synonymously in this order.

# DISCUSSION

**I. The County's Motion to Dismiss**

Plaintiff's second claim for relief is brought pursuant to 42 U.S.C. § 1983 and alleges that Wellpath and El Paso County were deliberately indifferent to Mr. Canett's serious medical needs in violation of the Fourteenth Amendment. Doc. 1 at 46. To plausibly allege deliberate indifference, "a plaintiff may show that the municipality had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *Finch v. Rapp*, 38 F.4th at 1244 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). To establish that notice, a plaintiff can prove "the existence of a pattern of tortious conduct" in previous matters that are similar to those alleged in the instant suit. *See Id.*; *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011).

Plaintiff puts forward two theories for the County's liability: that it is "directly liable for [its] own policy choices to hire and retain Wellpath, and non delegably liable for the constitutional policy violations Wellpath as its hired and repeatedly retained contractor." Doc. 1 at 47.

The County moves to dismiss this claim as brought against it through Sheriff Roybal. *See supra* n.1. The County argues that the Complaint's allegations do not suffice to state either type of claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In that case, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. To sue a local government under § 1983, a plaintiff must show a "direct causal link between the municipal action and the deprivation of federal rights." *Board of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

**A. Direct liability for contracting with Wellpath**

Plaintiff's direct-liability claim is based on the premise that when a "County is faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [it] may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (cleaned up). *See also Tafoya v. Salazar*, 516 F.3d 912, 916-21 (10th Cir. 2008) ("if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk").

Accepting the well-pled allegations in the complaint as true, they are more than sufficient to support that conclusion. The complaint alleges Wellpath understaffed its jails, assigned nurses to practice outside their scope of licensure, failed to screen for medical or mental health needs on intake, failed to hospitalize inmates with obvious medical needs, and would presume that inmates were faking or exaggerating their symptoms. Doc. 1 at 21. These practices allegedly led to at least six other inmate deaths on Wellpath's watch before Mr. Canett's. *Id.* at 22–28. The complaint also alleges the County knew about this, and not only knew about it, but fired Wellpath for this very reason. *Id.* at 39. It alleges that the replacement contractor, Armor, said the system it inherited from Wellpath was out of compliance and under a serious backlog of critical tasks. *Id.* at 40. It alleges that the former El Paso County Sheriff expressed concerns both before and after rehiring Wellpath about its failure to provide adequate medical care. *Id.* And it alleges that despite this, the County rehired Wellpath on what was supposed to be a temporary basis, but has since renewed that contract every year. *Id.* None of these allegations, alone, might be enough to state a claim of this sort. But together, they are sufficient.

The County's arguments to the contrary are unpersuasive. They argue that, under *Connick v. Thompson*, a municipality can only be held liable "for their own illegal acts," exclusive of the many instances of Wellpath's nationwide policies and practices. 563 U.S. 51, 60 (2011). But Plaintiff does not impute liability to the County for those actions. Rather, these many alleged failures of Wellpath are further evidence that the County knew its own actions in hiring Wellpath were indifferent to a "substantial risk of serious harm to inmates." *Tafoya,* 516 F.3d at 916.

The County also argues that allegations of other deliberate indifference cases against Wellpath—many of which were dismissed, settled, or otherwise resolved without a judicial finding of liability—cannot establish *Monell* liability. *See Rogacki v. Jefferson Cnty.*, No. 21-cv-02281-CNS-KLM, 2022 WL 16551336 (D. Colo. Oct. 31, 2022). This is a fair point, and if that were all Plaintiff were alleging, it would be insufficient. But where, as alleged here, a municipality contracts with a service provider with previously known deficiencies, evidence of lawsuits alleging those exact deficiencies further suggests both knowledge and deliberate indifference. *See King*, 680 F.3d at 1021.

### B. Delegation

Plaintiff also argues that the County is liable for Wellpath's alleged violations under the non-delegable duty doctrine. Doc. 1 at 4. The idea behind this theory is sound and unremarkable: a government agency cannot escape responsibility for its actions by hiring a private contractor to carry them out. *West v. Atkins*, 487 U.S. 42, 56 (1988) ("[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").

Still, I am not sure this doctrine goes as far as Plaintiff at times suggests. That a governmental entity, like the Sheriff's Office here, can't escape liability simply by hiring a private contractor to carry out some activities is not the same as saying that the governmental entity is automatically liable for any unconstitutional actions that a contractor might take. *See Monell*, 436 U.S. at 694; *West*, 487 U.S. at 56. This doctrine, in my view, is better viewed not as a distinct source of liability, but as a rejection of a possible defense a local government might make. That is, a local government's contracting with an outside party, alone, should neither be a defense to nor a source of a § 1983 claim. But if in outsourcing its duties, a local government knowingly takes on a risk that its contractor is likely to violate constitutional rights, it may be liable for those violations. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998) ("deliberate indifference may be found . . . if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.") (citing *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 409 (1997)).

To the extent that Plaintiff seeks to use this as a separate source or liability, I reject the theory.[2] But Claim 2 against the County is a single claim, not two, and it will therefore not be dismissed.

## II. Sergeant Scott's Motion to Dismiss Claim 3

Plaintiff's third and final claim for relief is brought only against Sergeant Scott in her individual capacity, alleging violations of the Colorado Constitution and Colorado statute. See Doc. 1 at 48-50 (citing Colo. Rev. Stat. § 13-21-131, Colo. Const Art. 2, §§ 20, 25. Sergeant Scott's motion to dismiss argues first, that since this is a state-law claim, this court

---

[2] I note, as Plaintiff does, that the County does not argue that there was no underlying constitutional violation alleged here, and that Wellpath itself has not moved to dismiss.

should decline to exercise jurisdiction over it, and second, that on the merits the complaint fails to state a claim under Colorado law. Doc. 27. I agree on the first point and thus do not address the second.

Colorado courts have not determined whether the due process provision and cruel and unusual punishment provisions of the Colorado Constitution includes the right to receive objectively reasonable medical care as a pretrial detainee. *Id.* Plaintiff admits that "this is therefore a matter of first impression." *Id.*

A federal district court is the wrong place for novel interpretations that would significantly expand the coverage of a state constitution—in our system of federated powers, that determination should be left to state courts whenever possible. *See Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions."); *Proprietors of the Charles River Bridge v. Proprietors of the Warren Bridge*, 36 U.S. 11 Pet. 420, 510 (1837) ("The laws and constitutions of the states belong solely to the state courts to expound."). Jurisdiction over Plaintiff's state law claim is only proper in this case because it is attached by a common nucleus of facts to the federal claim. 28 U.S.C. § 1367(a). And even then, jurisdiction is discretionary. *id,* at (c)(1); *See United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). Plaintiff suggests that "[t]his court can easily and sensibly adopt the well-understood Fourteenth Amendment deliberate indifference standards and apply them to a Colorado Constitution-based deliberate indifference claim." Doc. 40 at 11. Perhaps.

But mere similarity to a federal provision embracing a right is not sufficient to conclude a state constitution embraces the same right. *Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 324 (Colo. 2020) ("we reject Plaintiffs' contention that our state constitutional provision

- 7 -

must be interpreted in lockstep with its federal counterpart") (citing Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 174 (2018) ("There is no reason to think, as an interpretive matter, that constitutional guarantees of independent sovereigns, even guarantees with the same or similar words, must be construed in the same way.")). "[E]ven parallel text does not mandate parallel interpretation." *Id.* That is particularly true where "distinctive state-specific factors," counsel against lockstep interpretation. *People v. McKnight*, 446 P.3d 397, 406–07 (Colo. 2019). Where such a factor exists, departing from federal interpretation "despite the substantial similarity between" state and federal constitutional provisions "not only makes sense, it may be the most logical option." *Id.*

By Plaintiff's own argument, Colorado courts have already engaged in analysis of Article II, Sections 20 and 25 that is not identical to the federal constitution. See Doc. 40 at 12, n.4. (citing *People v. Young*, 814 P.2d 834, 842 (Colo. 1991). Because Colorado courts have not spoken on the precise issue in this case, but have made clear that Sections 20 and 25 of the Colorado Constitution are not to be interpreted in lockstep with the federal constitution, the applicability of those provisions to this situation is unclear.

In light of these considerations, I decline to exercise jurisdiction here. Where a claim raises a novel issue of state law, a district court "may decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c); *May v. Town of Mountain Village*, 944 F. Supp. 821, 826 (D. Colo Oct. 18, 1996) (*aff'd on other grounds*, 132 F.3d 576). Plaintiff insists that declining jurisdiction would "arbitrarily cleave this case in two and try[ing] each part in different forums would violate common sense notions of fairness to this litigant." *Id.* I don't agree. The case would be "cleaved in two" but that is not arbitrary—it is a result of the

- 8 -

federalism that is a foundational principle of our nation's governmental system. Indeed, it is that very system that provides Plaintiff with a potential second (state) source of liability that does not exist under federal law.

So while pursuing claims authorized by two sovereigns might require Plaintiff to pursue its claims in two fora, there is nothing inherently unfair about that, and Plaintiff makes no significant showing of prejudice in doing so. This case is still in its early stages, and no trial has been scheduled. Furthermore, the state law claim here lies against Sergeant Scott alone, separate from the claims against other defendants. Plaintiff's convenience is overcome by the principles of comity and state constitutional interpretation that have influenced federal courts since at least the 1830s. See *Proprietors of the Charles River Bridge*, 36 U.S. 11 Pet. at 510.

Plaintiff's claim would work a novel extension in the Colorado Constitution providing a specific right to pretrial detainees to medical care, but finding for defendant would foreclose to the plaintiff a remedy which a state court might find her entitled to pursue.[3] Federal Court is the wrong place to make this determination. Plaintiff's state law claim under Section 12-21-131 is therefore dismissed without prejudice.

---

[3] Declining to exercise jurisdiction does not foreclose relief in the event Plaintiff refiles her claim in state court. 28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted under" supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

- 9 -

## CONCLUSION

It is ORDERED that:

The County's motion to dismiss, **Doc. 32**, is **DENIED**; and

Sergeant Scott's motion to dismiss, **Doc. 27**, is **GRANTED**, and the claim against her is dismissed without prejudice.

DATED: March 27, 2024　　　　BY THE COURT:

　　　　　　　　　　　　　　　Daniel D. Domenico
　　　　　　　　　　　　　　　United States District Judge