# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THE ESTATE OF CRISTO JESUS CANETT, By and through its personal representative Elizabeth Naranjo;<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH, LLC; THE BOARD OF COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO; SHERIFF JOSEPH ROYBAL, in his official capacity; ANTHONY LUPO, individually; MICHELLE SILVA, individually; MAKAYLA PATTERSON, individually; JENNENE SCOTT, individually;<br><br>Defendants. | Civil Action No.:<br>23-cv-01211-DDD-MDB |

## (Court Ordered) MOTION FOR PROTECTIVE ORDER

COMES NOW, Defendant WELLPATH, LLC, ("Wellpath"), to respectfully request this Court enter a protective order to prohibit testimony concerning, or production of, any confidential and privileged Patient Safety Work Product ("PSWP") sought by Plaintiff in its revised Rule 30(b)(6) deposition notice (attached as Ex. A), showing the Court as follows.

A.  **Background on the PSQIA**

In July 2005, Congress passed the PSQIA as an answer to the identification of patient safety as a major health policy issue. By enacting the PSQIA, Congress passed legislation to facilitate the development of a "confidential and nonpunitive system" for reporting healthcare errors, in order for those errors to be identified and analyzed in hopes of improving patient safety and future care.  S. Rept. No. 108-96, "Patient Safety and Quality Improvement Act of 2003," Nov. 17, 2003, at 4.  The PSQIA would "promote a learning environment" and shift from an existing "culture of blame" that suppressed information about healthcare errors to transition to a "culture of safety" that focuses on information sharing and prevention of future errors.  *Id.* at 3.

From the beginning, Congress recognized that providers can only conduct such candid and open discussion of potential and actual errors if they are assured that their efforts are not used against them in civil or any other litigation. *See* 42 FR 70732.  Mandatory confidentiality and privilege protections were and are essential for the PSQIA to have its intended effect of improving patient safety and the quality of care on a national level. Providers must be able to rely on the explicit guarantee of privilege and confidentiality articulated in the statute.  The PSQIA made it possible for Patient Safety Organizations ("PSO"s), such as the Center for Patient Safety PSO  to become federally certified to conduct this important patient safety

work. Center for Patient Safety PSO was first certified on November 5, 2008. Wellpath has maintained an active participation agreement with Center for Patient Safety PSO since May 26, 2016, and has been creating confidential and privileged PSWP since that time.

B. **PSWP At Issue**

The PSQIA is very specific regarding the types of documents and other items that are eligible to become PSWP and the conditions precedent for that to occur. Specifically, "patient safety work product" is defined as:

> …any data, reports, records, memoranda, analyses (such as ***root cause analyses***), or ***written or oral statements*** (or copies of any of this material)
>
> (i) Which could improve patient safety, health care quality, or health care outcomes; and
>
>  (A) Which are assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented as within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information entered the patient safety evaluation system; or
>
>  (B) Are developed by a PSO for the conduct of patient safety activities; or
>
> (ii) Which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

*See* 42 CFR Part 3 § 3.20(emphasis added); *See also* 42 U.S.C. § 299b-21(7)(A).

Notably, root cause analyses, which are essentially the type of documents and testimony sought by the Plaintiff, seek to carefully examine the why behind an adverse event to determine a root cause and identify improvement opportunities, are a *specific* example of a type of PSWP protected under the federal law, listed in the plain language of the statute. What better example could the drafters have chosen other than a process that is specifically designed to determine the root cause of an event so that steps can be taken to prevent future harm. This moves beyond the initial information gathered about an event to examine causal factors, including any deviation from established processes, and identify a method, or more often, methods, to prevent the event (and potential patient harm) in the future. PSWP must have the confidentiality and privilege protections to encourage open, honest, and candid evaluations and conversations to benefit patients.

Furthermore, the plain language of the federal statute makes it explicitly clear that the privilege applies to written or oral statements that meet the definition of PSWP. To the extent Plaintiff seeks verbal testimony surrounding PSWP, that is equally prohibited by the PSQIA – the federal law on point.

The PSWP identified by Wellpath meets every condition to be valid PSWP outlined in the PSQIA. As previously noted in the affidavit of Dr. Bazzel (Ex.B), Wellpath has maintained a relationship with the Center for Patient Safety, a listed and certified PSO, since May 26, 2016. *Affidavit of Dr. Bazzel,* ¶ 4. Since that time,

Wellpath has maintained a Patient Safety Evaluation System ("PSES") as its internal process for collecting, managing, and analyzing PSWP, including that which may be reported to the Center for Patient Safety PSO. *Id.* ¶ 6. Part III is considered PSWP and developed as part of such patient safety activities. *Id.* ¶ 8-13. As Dr. Bazzel explains, the Part III relating to was prepared for reporting and was reported to the Center for Patient Safety PSO. *Id.* ¶ 9. Part III reflects contributory factors, training opportunities, and other findings and analyses that Wellpath uses to improve patient safety, health care quality, and health care outcomes as part of its relationship with a federally certified PSO. This is precisely the type of "root cause analysis" or PSWP the federal statute was designed to protect.

There is no basis to exclude this document from being PSWP nor allow Plaintiff to elicit testimony concerning same. It was not collected, maintained, or developed separately, and does not exist separately from Wellpath's PSES. *Id.* ¶ 11. It was not used to fulfill any recordkeeping or record maintenance requirement or obligation. *Id.* ¶ 11. It is not a medical record, not a record of billing or discharge information, and not otherwise an original patient or provider records. *Id.* ¶ 11. Part III falls squarely within the definition of PSWP and does not meet any category of non-PSWP; therefore, it is entitled to the full extent of protection that the PSQIA provides.

To the extent the Plaintiff seeks a verbal reading of the Part III, or, more likely, deliberations and analysis in the form of verbal statements surrounding the Part III and the Part III process, that data is equally protected by the PSQIA for two reasons both listed in the plain language of the statute. First, "oral statements" are specifically included within the statutory definition of PSWP. Secondly, statements that identify deliberations and analysis of a PSES, including that surrounding the reporting process, are likewise included within the definition of PSWP. The statute affords equal weight to all forms of PSWP.

### C. PSWP is Confidential and Privileged by Federal Law

Documents, data, statements, or other information meeting the definition of PSWP are subject to the unequivocal confidentiality and privilege protections in the PSQIA. The PSQIA includes express, unmistakable, and preemptive language regarding the weight of protections assigned PSWP. Specifically, the PSQIA directs:

> **Notwithstanding any other provision of Federal, State, or local law**, and subject to subsection (c), patient safety work product **shall be privileged and shall not be** – (1) **subject to a Federal, State, or local civil, criminal or administrative subpoena or order**, . . . (2) **subject to discovery** in connection with a Federal, State or local civil, criminal or administrative proceeding, . . . (3) subject to disclosure pursuant to the Freedom of Information Act . . . (4) admitted as evidence in any Federal, State, or local governmental civil proceeding . . . (5) admitted in a professional disciplinary proceeding of a professional disciplinary body established or specifically authorized under State law.

*See* 42 U.S.C. § 299b-22(a) (emphasis added).

Congress made the PSQIA's preemptive impact very clear through such explicit statutory language, which has been recognized by many courts across the County. The Supreme Court of Illinois found that PSQIA preempts any state law requiring disclosure because of the federal statute's "clear" and "unambiguous" statement of preemption. *Daley v. Teruel*, 107 N.E.3d 1028, 1045-47 (Ill. App. 1 Dist. 2018). "[T]he express language of the PSQIA demonstrates Congressional intent to preempt state peer-review statutes, at least to the extent that a state statute fails to protect information qualifying as patient safety work product." *Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.*, 222 F.Supp.3d 1038, 1043 (D.N.M 2016). The *Quimbey* court explained that if items meet the definition of PSWP, as they do here, the PSQIA would both expressly and impliedly preempt any state law, to the extent any state statute would require their production. Further, while upholding the privilege, the Kentucky Court of Appeals observed as follows:

> The Patient Safety Act is the cornerstone of a congressional scheme, overseen by HHS, of conglomerating and analyzing data identified as patient safety work product (PSWP) to improve patient healthcare generally and nationwide. Because we learn best from our mistakes, the scheme seeks "to encourage the reporting and analysis of medical errors," a process known generally as root cause analysis. But Congress appreciated the reluctance of medical providers to volunteer such information, even for a good cause such as this. Therefore, the Act created a comprehensive privilege to protect PSWP from discovery.

*Univ. of Ky. v. Bunnell*, 532 S.W. 3d 658, 665 (Ky.App.2017) (quoting *Tibbs v. Bunnell*, 448 S.W.3d 796, 801 (Ky. 2010).

Recently, in finding that the PSQIA privilege was not waivable, the Supreme Court of Nevada noted that Congress enacted the PSQIA to strike the appropriate balance between plaintiff rights and creating a new culture in the health care industry that provides incentives to identify and learn from errors. *Sunrise Hosp. & Med Ctr., LLC v. Eighth Jud. Dist. Ct.,* 544 P.3d 241, 247 (Nev. 2024) (citing S. Rep. No. 108-196). *See e.g., Tallahassee Mem'l Healthcare, Inc. v. Wiles*, 351 So. 3d 141, 151-52 (Fla. Dist. Ct. App. 2022) (concluding that the PSQIA expressly preempts Florida's Amendment 7 to the extent that the state law would compel the disclosure of documents and that the PSQIA "also preempts Amendment 7 because the two laws conflict in a way that it is impossible for [the hospital] to comply with both"); *Dep't of Fin. & Prof'l Regulation v. Walgreen Co.*, 970 N.E.2d 552, 556-58 (Ill. App. Ct. 2012) (affirming the trial court's holding that incident reports were "patient safety work product and are confidential, privileged and protected from discovery under the federal [Patient Safety Act]").

Numerous federal courts have similarly confirmed PSQIA protections, including for Wellpath specifically. *See e.g., Grayson v. County of Fresno*, Case No. 22CECG01628 (Sup. Ct. Cali., Fresno County Aug. 1, 2024) (Ex. C.) (finding that Wellpath met its burden to prove that Part III of the report was privileged under the PSQIA by proving that the Part III was created for reporting to a PSO, that it was not shared with anyone else, and that it was not created for reporting to any other

entity); *Nelms v. Wellpath, LLC*, 667 F. Supp. 3d 560 (E.D. Mich. Mar. 31, 2023) (upholding that PSQIA privilege applied to Part III of Wellpath's morbidity and mortality review following a patient's death given Wellpath's relationship with a PSO and showing all elements of privilege were satisfied); *Louzi v. Fort Bend Cty.*, 2021 U.S. Dist. LEXIS 85003 (S.D. Tex. May 3, 2021) (upholding the PSQIA privilege after finding no evidence Wellpath had provided any PSWP to any external party and upheld the PSQIA privilege. *Louzi v. Fort Bend Cty.*, 2021 U.S. Dist. LEXIS 85003 (S.D. Tex. May 3, 2021).

The cases where Wellpath was required to produce information claimed as PSWP are distinguishable from the facts here. *See e.g., Dence v. Wellpath*, 2022 U.S. Dist. LEXIS 215149 (D.C. Or. Nov. 29, 2022) (rejecting PSQIA privilege finding that the documents at issue were created as part of contractual obligation with its contracted county); *Hultman v. Cnty. Of Ventura*, 2022 U.S. Dist. LEXIS 107258 (C.D. Cal. May 16, 2022) (finding that the documents at issue were required under state obligations); *Herriges v. Cty of Macomb*, 2020 U.S. Dist. LEXIS 146663 (E.D. Mich. Aug. 14, 2020) (finding that PSQIA privilege could not apply to documents created years before PSO participation).

While federal law mandates that such information remain privileged and confidential, this in no way prohibits the Plaintiff from pursuing its case. All facts remain available for Plaintiff to discover through the medical records and other

8

sources. Wellpath has provided extensive information in response to Plaintiff's discovery requests. Notably, the Part I and Part II previously produced contain extensive information for the Plaintiff to discover facts relating to the care at issue. Wellpath is also not objecting to providing any policies and procedures on the grounds they are PSWP. However, a plaintiff <u>may not</u> - as Plaintiff seeks to do here - discover a provider's analyses, deliberations, and data assembled for the improvement of patient safety, health care quality, or health care outcomes – whether in written or verbal form—considered PSWP by federal law.

As PSWP, this information is subject to the mandatory confidentiality and privilege requirements outlined in the federal statute and are not subject to disclosure. The protections are mandatory and not discretionary. While several prohibitions on disclosure are outlined, the statute specifically provides that PSWP is privileged and shall not be discoverable or admissible as evidence in any civil litigation. 42 U.S.C. § 299b-22(a)(2), (4).

For these reasons and for those described in Dr. Bazzel's affidavit, to the extent Plaintiff seeks PSWP in response to the Rule 30(b)(6) deposition request and or in any request for the Part III, the request must be denied as the information is unequivocally confidential and privileged PSWP protected by the PSQIA. Wellpath respectfully asks for this Court for a protective order to prevent disclosure of information based on the controlling federal law.

Dr. Bazzel's Declaration in the Murray case (Ex. D) applies in full effect to the requested disclosures of Part III Mortality reviews of the other inmate patients. More so, though, the protections of the other statutes mentioned below in Section E apply in full force here. Upon review, Wellpath can fine no Mortality Reviews for inmate patients Reed or Poppell.

**D. Mortality Reviews, Part I – Other Inmate Patients/Revisiting Earlier Ruling**

Plaintiff seeks Part I of the Mortality Reviews of Mr. Canett and several other El Paso inmate/patients. Examination of Part I of the Canett mortality review shows that the information sought in that section would be subject to federal production protections. Reviewing just Mr. Canett's Part I the Court will find information provided to appropriate personnel for the appropriate reasons pertaining to Mr. Murray's medications, his compliance with those medications, the manner of death, his substance abuse history, and his medical condition on intake and beyond. This is precisely what will be find in connection with Part I information for all other identified inmate patients.

The PSQIA is very specific regarding the types of documents and other items that are eligible to become PSWP and the conditions precedent for that to occur. Specifically, "patient safety work product" is defined as: …any data, reports, records, memoranda, analyses, or written or oral statements which could improve patient safety, health care quality, or health care outcomes; and

(A) Which are assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented as within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information entered the patient safety evaluation system; or

(B) Are developed by a PSO for the conduct of patient safety activities; or

(i) Which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

42 CFR Part 3 § 3.20; See also 42 U.S.C. § 299b-21(7)(A). This information is precisely the type of information assembled for and considered in Part III of the Wellpath Mortality Reviews, and should be protected from production, even as pertains to Mr. Canett. See Bazzel Declaration and Affidavit.

Moreover, production of Part I of the mortality reviews of these others would be violative of HIPPA, 45 C.F.R. § 160.103; 45 C.F.R. §164.502. And, since many of Plaintiff's requests involve alleged substance abuse/withdrawal issues, those substance abuse and related mental health records are generally confidential and not subject to disclosure. See 42 USC § 290dd-2a (regulation of substance abuse information disclosure); 42 USC § 1320d(6) et seq. (regulation of mental he Disclosure of substance abuse records is a privilege that should not be "lightly abrogated." *Fannon v. Johnston*, 88 F. Supp. 2d 753 (E.D. Mich, 2000). The governing regulations carry a strong presumption against disclosing these records. 42 U.S.C. § 290ee-3(a); see also *Ellison v. Cocke County, Tennessee*, 63 F.3d 467,

470 (6th Cir. 1995) (Congress felt the strictest adherence to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help).

F.  **Mortality Reviews, Part II**

Plaintiff likewise seeks Part II of Mr. Canett and others Mortality Reviews. Again using Mr. Canett's Part II as a representative example, and admittedly not as detailed as with Part I, this portion of the Mortality Review specifically indicates the type of death, (Expected/Unexpected/Suicide/Suicide Attempt/Clinical Event) and also identifies what specific "information was considered in conjunction with the Mortality Review". This is information that the appropriate reviewing body determined was necessary for review in analyzing this death, and is subject to protections under the Act.

More, this is likewise HIPAA protected information with respect to the other inmate/patients. And, as of those inmate/patients with substance abuse histories, the information in Part II is part of the same substance abuse treatment record, production of which runs afoul of 42 C.F.R. part 2. The Court should grant the instant Motion.

WHEREFORE, Wellpath respectfully requests this Court to inquire into and grant this Motion.

Respectfully submitted this 6th day of September, 2024.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
PHILLIP E. FRIDUSS
ROBIN E. DAITCH
*Counsel for Defendants Wellpath, LLC*
*Makayla Patterson and Michelle Silva*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1755
Tel: 404-954-5000
Fax: 404-954-5020
E-Mail: pfriduss@hallboothsmith.com
rdaitch@hallboothsmith.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THE ESTATE OF CRISTO JESUS CANETT, By and through its personal representative Elizabeth Naranjo;<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH, LLC; THE BOARD OF COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO; SHERIFF JOSEPH ROYBAL, in his official capacity; ANTHONY LUPO, individually; MICHELLE SILVA, individually; MAKAYLA PATTERSON, individually; JENNENE SCOTT, individually;<br><br>Defendants. | Civil Action No.:<br>23-cv-01211-DDD-MDB |

## CERTIFICATE OF SERVICE

This is to certify that on this day I have electronically filed the foregoing **(Court Ordered) MOTION FOR PROTECTIVE ORDER** with the Court using the CM/ECF System and served a copy via the e-filing system, which will automatically serve the following parties:

Anna Holland Edwards
Erica T. Grossman
Dan Weiss
Rachel Kennedy
**HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC**
1437 North High Street
Denver, CO 80218
anna@hheglaw.com
egrossman@johnhollandlaw.com
dan@hheglaw.com
rachel@hheglaw.com
*Counsel for Plaintiffs*

Bryan E. Schmid
Nathan James Whitney
Steven Ward Martyn
**EL PASO COUNTY ATTORNEY'S OFFICE**
200 South Cascade Avenue, Suite 150
Colorado Springs, CO 80903
bryanschmid@elpasoco.com
nathanwhitney@elpasoco.com
stevenmartyn@elpasoco.com
*Counsel for Bd of Cty Commissioners of the County of El Paso, Colorado*

Paul Andrew Faraci
**FARACI LEASURE, LLC**
4500 Cherry Creek Drive South
Suite 675
Denver, CO 80246
pfaraci@faracileasure.com
*Counsel for Anthony Lupo*

Ryan Douglas Doherty
**COLORADO SPRINGS CITY ATTORNEY'S OFFICE**
30 South Nevada Avenue, Suite 501
Colorado Springs, CO 80903
ryan.doherty@coloradosprings.gov
*Counsel for Jennene Scott*

Brandon Philip Hull
Jeremy Brent Goldblatt
Lindsey Warren Jay
**OVERTURF MCGATH & HULL, P.C.**
625 East 16th Avenue, Suite 100
Denver, CO 80203
bph@omhlaw.com
jbg@omhlaw.com
lwj@omhlaw.com
*Counsel for Sheriff Joseph Roybal*

Respectfully submitted this 6th day of September, 2024.

[Signature on next page]

|  | **HALL BOOTH SMITH, P.C.** |
|---|---|
|  | */s/ Phillip E. Friduss* |
|  | PHILLIP E. FRIDUSS |
|  | ROBIN E. DAITCH |
| 191 Peachtree Street, N.E. | *Counsel for Defendants Wellpath, LLC* |
| Suite 2900 | *Makayla Patterson and Michelle Silva* |
| Atlanta, GA 30303-1755 |  |
| Tel: 404-954-5000 |  |
| Fax: 404-954-5020 |  |
| E-Mail: pfriduss@hallboothsmith.com |  |
| rdaitch@hallboothsmith.com |  |