# EXHIBIT B

# Grady Judson Bazzel, M.D. Affidavit

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 23-cv-1211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
By and through its personal representative Elizabeth Naranjo;

    Plaintiff,

v.

WELLPATH, LLC;
THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF EL PASO, COLORADO;
SHERIFF JOSEPH ROYBAL, in his official capacity;
ANTHONY LUPO, individually;
MICHELLE SILVA, individually;
MAKAYLA PATTERSON, individually;
JENNENE SCOTT, individually;

    Defendants.

---

## CERTIFICATION OF GRADY JUDSON BAZZEL, M.D.
## PURSUANT TO 28 U.S.C. 1746

---

I, GRADY JUDSON BAZZEL, M.D., under penalty of perjury, hereby swear and affirm the following:

1. I am over the age of eighteen (18) years of age, reside in Tennessee, and am competent to testify to the matters contained herein;

2. I am employed by Wellpath, LLC ("Wellpath") as its Patient Safety Officer;

3. Following the enactment of the Patient Safety and Quality Improvement Act of 2005 (the "PSQIA"), 42 U.S.C. § 299b-21, *et seq.* Wellpath (formerly in the name of Correct Care Solutions or "CCS") entered into a relationship with a Patient Safety Organization ("PSO") for all purposes consistent with the Act, including, but not limited to, the protected exchange of patient safety and quality information in the conduct of patient safety activities;

4. Beginning on May 26, 2016 and continuing to the present, Wellpath has maintained a contract with the Center for Patient Safety, a listed and certified PSO, ("Center for Patient Safety PSO") for the exchange of patient safety and quality information in the conduct of patient safety activities;

5. Beginning on November 5, 2008, and continuing to the present, Center for Patient Safety PSO has been and continues to be certified, listed, and in good standing with the Department of Health and Human Services' Agency for Healthcare Research and Quality;

6. Since May 26, 2016, Wellpath operated a Patient Safety Evaluation System ("PSES") as its internal process for collecting, managing and analyzing the information that may be reported to Center for Patient Safety PSO, including confidential and privileged Patient Safety Work Product ("PSWP") within the meaning of the PSQIA;

7. Wellpath's PSES encompasses information assembled, developed, deliberated upon or analyzed from patient safety and quality activities and includes information that may result in documents such as root cause analyses, patient safety analyses (as part of a morbidity and mortality review), and other patient safety and quality of care assessments. Data, reports, memoranda, analyses, and statements that are assembled and developed for reporting to the PSO and reported to the PSO (including data within the PSES for reporting), as well as that received from the PSO for patient safety activities, which could improve patient safety, health care quality, and healthcare outcomes are considered confidential and privileged PSWP. Likewise, information that identifies or constitutes the deliberations and analysis of, or identifies the fact of reporting pursuant to, a PSES is also considered confidential and privileged PSWP;

8. Following Cristo Canett's death on April 26, 2022, at issue in the above captioned matter, Wellpath quality improvement personnel held a meeting within the PSES with the intent to

2

prepare a Part III – Report and Recommendations Following Mortality or Morbidity Review" ("Part III of the M&M Report") to report to the Center for Patient Safety PSO;

9.  Following the meeting, "Mortality & Morbidity Report and Review, Part III – Report and Recommendations Following Mortality or Morbidity Review" ("Part III of the M&M Report") was completed by Christine Mohr, Psy.D., LP, HSA. Part III of the M&M Report was assembled or developed by Wellpath with the exclusive intent to report to the Center for Patient Safety PSO and was reported to the Center for Patient Safety PSO on May 27, 2022;

10. Part III of the M&M Report involving Cristo Canett has been at all times treated as confidential and privileged PSWP;

11. Part III was not collected, maintained or developed separately from the PSES, nor does it exist separately from the PSES. It was neither created nor used to fulfill any external reporting (including any state or federal agency), recordkeeping, or record maintenance obligation. It was not publicly disclosed or reported, nor was it required to be publicly disclosed or reported, including to the El Paso County Sheriff's Office. Part III of the M&M Report was never provided to any external person or entity, other than the Center for Patient Safety PSO;

12. Wellpath fulfills any obligations to the El Paso County Sheriff's Office or any other external entity without providing its confidential and privileged PSWP. Regarding a specific event (like the one involving Mr. Canett), Wellpath may provide a Patient Informational Report (Part I), may participate in an Administrative Review with non-PSWP (documented on a Part II), and potentially an action plan with steps to prevent recurrence (the "results" of a morbidity and mortality review). None of these items are considered PSWP, and none of these steps include providing Wellpath's confidential and privileged PSWP, including any Part IIIs. On information and belief, Mr. Canett's Parts I and II have been provided in this case;

3

13. As Part III constitutes confidential and privileged PSWP, Wellpath is strictly prohibited from disclosing without an applicable disclosure exception; and

14. Wellpath asserts no privilege under the PSQIA with respect to any medical record, original patient or healthcare provider information

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2024

Grady Judson Bazzel, M.D.,
Wellpath, LLC Patient Safety Officer

4