# EXHIBIT C
## 22CECG Etc.

Case No. 1:23-cv-01211-DDD-MDB   Document 117-3   filed 09/06/24   USDC Colorado pg 1 of 7

| SUPERIOR COURT OF CALIFORNIA - COUNTY OF FRESNO<br>Civil Department - Non-Limited | Entered by: |
|---|---|
| TITLE OF CASE:<br>Vickie Grayson vs. County of Fresno | |
| LAW AND MOTION MINUTE ORDER | Case Number:<br>22CECG01628 |

Hearing Date: **August 1, 2024**           Hearing Type:        **Motion - Compel Further**
Department:    **503**                            Judge/Temp. Judge: **Hamilton, Jr., Jeffrey Y.**
Court Clerk:   **Lopez, Maria**                   Reporter/Tape:     **Not Reported**

**Appearing Parties:**

Plaintiff:                                         Defendant:

Counsel Via Zoom: Jeffrey Mikel                    Counsel Via Zoom: Sabreen Sandhu

[ X ] Upon review the court is not persuaded to change its Tentative Ruling and as such it is adopted as the Order of the Court.

[ ] Continued to    [ ] Set for __ at __ Dept. __ for __

[ ] Submitted on points and authorities with/without argument.    [ X ] Matter is argued and submitted.

[ ] Upon filing of points and authorities.

[ ] Motion is granted    [ ] in part and denied in part.    [ ] Motion is denied  [ ] with/without prejudice.

[ ] Taken under advisement

[ ] Demurrer    [ ] overruled  [ ] sustained  with __ days to  [ ] answer  [ ] amend

[ X ] Tentative ruling becomes the order of the court.  No further order is necessary.

[ X ] Pursuant to CRC 3.1312(a) and CCP section 1019.5(a), no further order is necessary.  The minute order adopting the tentative ruling serves as the order of the court.

[ X ] Service by the clerk will constitute notice of the order.

[ X ] See attached copy of the Tentative Ruling.

[ ] Judgment debtor __ sworn and examined.

[ ] Judgment debtor __ failed to appear.
    Bench warrant issued in the amount of $ __

JUDGMENT:
[ ] Money damages    [ ] Default    [ ] Other __ entered in the amount of:
    Principal $__    Interest $__    Costs $__    Attorney fees $__    Total $__
[ ] Claim of exemption  [ ] granted  [ ] denied.  Court orders withholdings modified to $__ per __

FURTHER, COURT ORDERS:
[ ] Monies held by levying officer to be    [ ] released to judgment creditor.  [ ] returned to judgment debtor.
[ ] $__ to be released to judgment creditor and balance returned to judgment debtor.
[ ] Levying Officer, County of __, notified.    [ ] Writ to issue
[ ] Notice to be filed within 15 days.    [ ] Restitution of Premises
[ ] Other: __

(03)

<u>**Tentative Ruling**</u>

Re: ***Grayson v. County of Fresno***
Case No. 22CECG01628

Hearing Date: August 1, 2024 (Dept. 503)

Motion: Plaintiff's Motion to Compel Further Responses to Requests for Production of Documents

**Tentative Ruling:**

To deny plaintiff's motion to compel further responses to requests for production of documents, in its entirety.

**Explanation:**

First of all, to the extent that plaintiff seeks to compel further responses to the requests that seek copies of emails related to jail staffing issues and a timeline of the events that led up to decedent's death, the motion is now moot because Wellpath has offered to provide the requested documents. Therefore, the court intends to deny the motion to compel further responses to the requests for production of the emails and the timeline of events.

Next, to the extent that plaintiff seeks to compel a further response to the requests that seek production of the Mortality and Morbidity Report, Parts I and III, the defendant has objected and raised objections based on the privileges under Evidence Code section 1157 and the federal Patient Safety and Quality Improvement Act (PSQIA). Defendant argues that Parts I and III were prepared as part of a clinical peer review process to assist with patient safety and to improve healthcare quality, so the reports are privileged under Evidence Code section 1157. In addition, defendant asserts that it prepared Part III of the report with the intent to report to a federally certified Patient Safety Office (PSO), and that it did in fact send Part III to a PSO, albeit not until recently. As a result, defendant contends that Parts I and III are privileged and cannot be produced.

The burden of establishing entitlement to nondisclosure under Evidence Code section 1157 rests with the parties resisting discovery, not the party seeking it. (*Matchett v. Superior Court* (1974) 40 Cal.App.3d 623, 627; *Brown v. Superior Court* (1985) 168 Cal.App.3d 489, 501.) Here, Wellpath has met its burden of showing that the requested documents are privileged under the medical peer review privilege and PSQIA. As a result, the court declines to order defendant to produce Parts I and III of the report.

Under Evidence Code section 1157, "Neither the proceedings nor the records of organized committees of medical ... staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body ... shall be subject to discovery." (Evid. Code § 1157, subd. (a).)

3

Here, Wellpath is not a "hospital", so Wellpath must show that it meets the definition of a "peer review body" under Business & Professions Code section 805. Section 805 states that a "'peer review body' "includes: ... A committee organized by any entity consisting of or employing more than 25 licentiates of the same class that functions for the purpose of reviewing the quality of professional care provided by members or employees of that entity." (Bus. & Prof. Code § 805, subd. (a)(1)(B)(iv).)

In the present case, Wellpath has presented evidence that it meets the definition of a "peer review body" under Business and Professions Code section 805, since it states that it convened a clinical review committee for the purpose of reviewing the quality of care provided to decedent, and to recommend improvements to future patient care quality at Wellpath. (Silvera decl., ¶ 12.) Ms. Silvera also states that Wellpath operates in several jails in California and nationwide, and that it employs more than 25 licentiates in the same class, e.g. physicians, surgeons, physician assistants, and nurse practitioners. (Ibid.) Parts I and III of the report were prepared by Ms. Silvera with the assistance of several other people, including Lori Taunton, DPC, LPC, NCC, CCHP, Tiphani Lampkin (Wellpath CQI Coordinator), and Fuji Collins, PhD, M.A. (Wellpath Regional Director of Operations), and Terry Ramirez, LMFT. (Id. at ¶ 9.) Discussions for Part I were commenced on June 14, 2021 and the document was drafted and finalized after the clinical review meeting on June 30, 2021. (Ibid.)

Thus, Wellpath has shown that it meets the definition of a peer review body for the purpose of sections 805 and 1157. It has also shown that Parts I and III of the report were prepared for the purpose of evaluating and improving patient care at Wellpath. As a result, the peer review privilege under section 1157 applies to Parts I and III of the report, and the court will not order the report to be produced.

Plaintiff argues that the report cannot have been prepared for a peer review committee because it was authored by a single person, Jamie Silvera, rather than a committee of people. However, Silvera has explained that, while she was the primary person responsible for preparing the report, she consulted with several other healthcare professionals when writing the report. Also, while she began preparing Part I of the report on June 14, 2021, which was before the clinical review meeting, the report was finished after the meeting on June 28, 2021. (Id. at ¶¶ 9-12.) Therefore, defendant has met its burden of showing that Parts I and III of the report are privileged under section 1157.

Nevertheless, plaintiff argues that, even if section 1157 applies, the court should not find that the report is barred from discovery because this is a federal civil rights action, and section 1157's privilege is in conflict with the liberal policy of allowing discovery in federal actions. Plaintiff cites to Leon v. County of San Diego (S.D. Cal. 2001) 202 F.R.D. 631 and Burrows v. Redbud Community Hosp. (N.D. Cal.1998) 187 F.R.D. 606 in support of its argument. However, Leon and Burrows were decided in federal District Courts under federal law and the federal rules of civil procedure. Their holdings are not binding in state court, and this court is not obliged to follow them. Also, the plaintiffs in Leon and Burrows raised solely claims under federal law, whereas the present case raises both federal civil rights and state law claims. As a result, the court declines to follow the holdings of Leon and Burrows here, and instead it finds that section 1157's peer review privilege applies to Parts I and III of the report.

Plaintiff also contends that Wellpath waived its right to assert the peer review privilege by sharing some of the information from Parts I and III of the report with the

4

County or other persons or entities. Plaintiff points out that Wellpath employees attended the administrative meeting regarding decedent's death that included County employees. She speculates that Wellpath must have shared some information from the report with the County at the meeting, and therefore Wellpath has waived the right to assert the peer review privilege here.

However, plaintiff has not presented any evidence that would tend to show that Wellpath has shared any information from Parts I and III of the report with the County or anyone else. Instead, she seems to be merely speculating that Wellpath must have shared the information because its employees attended a meeting about decedent's death with County employees. Yet Wellpath denies that it shared any information from Parts I or III of the report at the meeting with the County, and insists that it has not shared any specific recommendations from Parts I and III with anyone outside of Wellpath. (Silvera decl., ¶ 13.) Part III was eventually sent to the Center for Patient Safety (CPS) as part of Wellpath's compliance with PSQIA. (Id. at ¶ 14, see also Samson decl., ¶¶ 11, 14.) However, Part III was not shared with anyone else outside of Wellpath. (Samson decl., ¶¶ 9-16.) Plaintiff has not cited to any evidence that would tend to rebut Wellpath's denial that it shared information from Parts I or III with other persons or entities. Therefore, plaintiff has failed to show that Wellpath waived its privilege objection under section 1157.

In addition, Wellpath has met its burden of showing that Part III of the report is privileged under the federal PSQIA as well. Under the PSQIA, "patient safety work product" is privileged and not subject to discovery. (*Estate of Hultman v. County of Ventura* (2022) 2022 WL21001723, * 2.) 42 U.S.C. section 299b-21 defines "Patient safety work product" as, "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements--(i) which--(I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or (II) are developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes; or (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system." (42 U.S.C. section 299b-21, subd. (7)(A), paragraph breaks omitted.)

"'The term "patient safety evaluation system" means the collection, management, or analysis of information for reporting to or by a patient safety organization.' '[I]nformation prepared for purposes other than reporting to a PSO is not PSWP under the reporting pathway.' 'PSWP cannot be used to fulfill external obligations,' including 'mandatory requirements placed upon providers by Federal and state health regulatory agencies.' The PSQIA 'does not permit providers to use the privilege and confidentiality protections for PSWP to shield records required by external recordkeeping or reporting requirements.' 'The intent of the system established by the Patient Safety Act is to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities.'" (*Estate of Hultman, supra*, at *3, citations omitted.)

In the present case, Wellpath has presented evidence stating that Part III of the report was created with the intent to submit it to CPS, which is Wellpath's designated Patient Safety Organization, that it was not shared with anyone else, and that it was not created for reporting to any other entity. (Silvera decl., ¶¶ 13, 14, Samson decl., ¶¶ 10-16.) The purpose of Part III was to improve the quality of patient care at Wellpath. (Samson, ¶ 10.) While Part III was supposed to be reported to CPS after it was prepared,

5

for unknown reasons it was not sent to CPS at the time it was prepared. (*Id.* at ¶ 11.) Ms. Samson personally sent Part III to CPS on June 18, 2024. (*Ibid.*) Part III was maintained in confidence and not used for any non-patient safety purpose during the time of the delay in reporting to CPS. (*Id.* at ¶¶ 13, 15.)

Therefore, Wellpath has met its burden of showing that the privilege for Patient Safety Work Product under the PSQIA applies to Part III of the report, and it should not be produced. While plaintiff contends that Part III does not meet the requirements of the PSQIA because it was not actually reported to CPS until June 18, 2024, after the present motion was filed, it appears that the failure to report to CPS was an inadvertent omission. The evidence submitted by Wellpath indicates that Part III of the report was a "root cause" analysis created for the purpose of reporting to a PSO like CPS, and that it was eventually sent to CPS, albeit after a considerable delay. As a result, the court finds that Part III of the report is covered by the PSQIA privilege for Patient Safety Work Product, and it will deny the motion to compel its production.

Pursuant to California Rules of Court, rule 3.1312(a), and Code of Civil Procedure section 1019.5, subdivision (a), no further written order is necessary. The minute order adopting this tentative ruling will serve as the order of the court and service by the clerk will constitute notice of the order.

**Tentative Ruling**
**Issued By:** _____jyh_____ **on** ___7/29/24___.
  (Judge's initials)        (Date)

6

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA - COUNTY OF FRESNO**<br>Civil Department, Central Division<br>1130 "O" Street<br>Fresno, California 93724-0002<br>(559) 457-2000 | *FOR COURT USE ONLY* |
| TITLE OF CASE:<br>Vickie Grayson vs. County of Fresno | |
| **CLERK'S CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CECG01628 |

I certify that I am not a party to this cause and that a true copy of the:

**08/01/2024 Minute Order and copy of Tentative Ruling**

was placed in a sealed envelope and placed for collection and mailing on the date and at the place shown below following our ordinary business practice. I am readily familiar with this court's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

Place of mailing: Fresno, California 93724-0002
On Date: 08/01/2024                  Clerk, by _____, Deputy
                                                         M. Lopez

Cameron Sehat
The Sehat Law Firm, PLC
5100 Campus Dr., Suite 200
Newport Beach, CA 92660

Margaret E. Long
Prentice Long, PC
2240 Court Street
Redding, CA 96001

Paul A. Cardinale
Medical Defense Law Group
3800 Watt Ave, Suite 245
Sacramento, CA 95821

☐ Clerk's Certificate of Mailing Additional Address Page Attached

TGN-06b R08-06                  **CLERK'S CERTIFICATE OF MAILING**