# EXHIBIT D

## DM Library

Docusign Envelope ID: CB4FE9AE-D873-48C3-9724-D827DFE505B2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.:** 23-cv-01847-GPG-MDB

THE ESTATE OF DANIEL JAMES MURRAY,
by and through its personal representative, David Murray;

       Plaintiff,

v.

WELLPATH, LLC;
SHERIFF JOSEPH ROYBAL, in his official capacity;
DIANNE HAWTHRONE-CRUZ, individually;
WENDY MORRIS, individually;
GEORGE SANTINI, individually;
J. DYLAN COX, individually;
MICHELLE SILVA, individually;
MAGDALINA BEULTEMANN, individually;

       Defendants.

---

**DECLARATION OF GRADY JUDSON BAZZEL, M.D.
PURSUANT TO 28 U.S.C. 1746**

---

I, GRADY JUDSON BAZZEL, M.D., under penalty of perjury, hereby swear and affirm the following:

1. I am over the age of eighteen (18) years of age, reside in Tennessee, and am competent to testify to the matters contained herein;

2. I am employed by Wellpath, LLC ("Wellpath"). During the time of the events detailed in this declaration, I was the Patient Safety Officer;

3. Following the enactment of the Patient Safety and Quality Improvement Act of 2005 (the "PSQIA"), 42 U.S.C. § 299b-21, *et seq.* Wellpath (formerly in the name of Correct Care Solutions or "CCS") entered into a relationship with a Patient Safety Organization ("PSO") for all

purposes consistent with the Act, including, but not limited to, the protected exchange of patient safety and quality information in the conduct of patient safety activities;

4. Beginning on May 26, 2016 and continuing to the present, Wellpath has maintained a contract with the Center for Patient Safety, a listed and certified PSO, ("Center for Patient Safety PSO") for the exchange of patient safety and quality information in the conduct of patient safety activities;

5. Beginning on November 5, 2008, and continuing to the present, Center for Patient Safety PSO has been and continues to be certified, listed, and in good standing with the Department of Health and Human Services' Agency for Healthcare Research and Quality;

6. Since May 26, 2016, Wellpath has operated a Patient Safety Evaluation System ("PSES") as its internal process for collecting, managing and analyzing the information that may be reported to Center for Patient Safety PSO, including confidential and privileged Patient Safety Work Product ("PSWP") within the meaning of the PSQIA;

7. Wellpath's PSES encompasses information assembled, developed, deliberated upon or analyzed from patient safety and quality activities and includes information that may result in documents such as root cause analyses, patient safety analyses (as part of a morbidity and mortality review), and other patient safety and quality of care assessments. Data, reports, memoranda, analyses, and statements that are assembled and developed for reporting to the PSO and reported to the PSO (including data within the PSES for reporting), as well as that received from the PSO for patient safety activities, which could improve patient safety, health care quality, and healthcare outcomes are considered confidential and privileged PSWP. Likewise, information that identifies or constitutes the deliberations and analysis of, or identifies the fact of reporting pursuant to, a PSES is also considered confidential and privileged PSWP;

2

8. Following Daniel Murray's death on July 4, 2022, at issue in the above captioned matter, Wellpath quality improvement personnel held a meeting within the PSES with the intent to prepare a Part III – Report and Recommendations Following Mortality or Morbidity Review" ("Part III") to report to the Center for Patient Safety PSO;

9. Following the meeting, Part III was completed by Christine Mohr, Psy.D., LP, HSA. Part III was assembled or developed by Wellpath with the exclusive intent to report to the Center for Patient Safety PSO and was reported to the Center for Patient Safety PSO on July 29, 2022.

10. Generally, a Part III goes beyond the factual information included in Part I and the information contained on Part II, which I am informed and believe, have been provided to Plaintiff in this case for Daniel Murray. Part III reflects contributory factors, training opportunities, and other findings and analysis that can be used to improve patient safety, health care quality, and health care outcomes. Part IIIs are not created for use at the Administrative Review, and in fact are not used or disclosed at Administrative Reviews, and there is nothing in the Wellpath policy that requires disclosure of Part IIIs at Administrative Reviews. An Administrative Review is a separate review completed within the county that does not involve sharing of confidential and privileged PSWP;

11. Part III involving Daniel Murray has been at all times treated as confidential and privileged PSWP;

12. Part III was not collected, maintained or developed separately from the PSES, nor does it exist separately from the PSES. It was neither created nor used to fulfill any external reporting (including any state or federal agency), recordkeeping, or record maintenance obligation. It was not publicly disclosed or reported, nor was it required to be publicly disclosed or reported, including to the El Paso County Sheriff's Office. Part III regarding Daniel Murray was never provided to any external person or entity, other than the Center for Patient Safety PSO;

3

13. Wellpath fulfills any obligations to the El Paso County Sheriff's Office or any other external entity without providing its confidential and privileged PSWP. Regarding a specific event (like the one involving Mr. Murray), Wellpath may provide a Patient Informational Report (Part I) and may participate in an Administrative Review with non-PSWP (documented on a Part II). None of these items are considered PSWP, and none of these steps include providing Wellpath's confidential and privileged PSWP;

14. In addition to the PSWP relating to Daniel Murray, Wellpath has identified multiple additional documents as PSWP that relate to the other inmates at the same site. Similarly, these items have been at all times considered confidential and privileged PSWP. Following the patient safety events regarding the inmates below, Wellpath quality improvement personnel held meetings within the PSES with the intent to prepare a Part III to report to the Center for Patient Safety PSO. These documents have been at all times treated as confidential and privileged PSWP.

| Inmate: | Date of Event: | Part III Completed by: | Date of Reporting to Center for Patient Safety: |
|---|---|---|---|
| Sean Williams | 2-15-2022 | Christine Mohr, Psy.D., LP; HSA | 8-22-2024 |
| Laura Gibbs | 3-17-2022 | Christine Mohr, Psy.D., LP; HSA | 8-22-2024 |
| Cristo Canett | 4-26-2022 | Christine Mohr, Psy.D., LP; HSA | 5-27-2022 |
| Cassandra Ramirez | 7-3-2022 | Christine Mohr, Psy.D., LP; HSA | 7-29-2022 |
| Felicia Hudson | 10-14-2022 | Christine Mohr, Psy.D., LP; HSA | 11-29-2022 |

15. Wellpath recognizes the reporting delay for inmates Sean Williams and Laura Gibbs. Wellpath makes all efforts to report PSWP within a reasonable time and has made significant improvements in recent years to increase the efficiency of reporting. The Part IIIs for

4

Sean Williams and Laura Gibbs were close in time and were not reported as quickly as the others because of an administrative oversight, which has now been remedied. However, these Part IIIs remained within Wellpath's PSES for reporting since their creation and were never used for any non-patient safety purpose. They have been treated as confidential and privileged PSWP at all times;

16. With respect to the additional inmates, Wellpath likewise fulfilled any obligations to the El Paso County Sheriff's Office regarding these inmates without providing its confidential and privileged PSWP. Regarding these events, Wellpath provided a Patient Informational Report (Part I) and participated in an Administrative Review with non-PSWP;

17. The Part IIIs on the other inmates were not collected, maintained, or developed separately from the PSES, nor do they exist separately from the PSES. They were neither created nor used to fulfill any external reporting (including any state or federal agency), recordkeeping, or record maintenance obligation. They were not publicly disclosed or reported, nor were they required to be publicly disclosed or reported, including to the El Paso County Sheriff's Office. Part IIIs were never provided to any external person or entity, other than the Center for Patient Safety PSO. Wellpath has treated these Part IIIs as confidential and privileged PSWP at all times.

18. As PSWP, Wellpath is strictly prohibited from disclosing without an applicable disclosure exception;

19. Wellpath does not claim any privilege under the PSQIA with respect to any medical record, original patient, or healthcare provider information.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/28/2024

Grady Judson Bazzel, M.D.

5