# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THE ESTATE OF CRISTO JESUS CANETT, By and through its personal representative Elizabeth Naranjo;<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH, LLC; THE BOARD OF COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO; SHERIFF JOSEPH ROYBAL, in his official capacity; ANTHONY LUPO, individually; MICHELLE SILVA, individually; MAKAYLA PATTERSON, individually; JENNENE SCOTT, individually;<br><br>Defendants. | Civil Action No.:<br>23-cv-01211-DDD-MDB |

## DEFENDANT WELLPATH, LLC'S AMENDED/SUBSTITUTE OBJECTION TO MAGISTRATE JUDGE'S OCTOBER 11, 2024 DISCOVERY ORDER

COMES NOW WELLPATH, LLC, Defendant herein, and files and serves its Objection to the Magistrate Judge's October 11, 2024 Discovery Order, showing the Court as follows:

# I. INTRODUCTION

In this case, at issue in the October 3, 2024 hearing before Magistrate Judge Maritza Dominguez Braswell was Wellpath's Motion for Protective Order (ECF 117) concerning certain proposed 30(b)(6) deposition topics and document production to which Wellpath claims privilege under the Patient Safety and Quality Improvement Act ("PSQIA" and the "Act").[1] Prior to that Motion and Judge Braswell's October11, 2024 Order denying same, the Court had ruled the various Parts I & II to be not privileged, but specifically ruled that the at-issue Part IIIs were indeed privileged. Prior to the October 3 hearing, the Magistrate entertained a discovery hearing on the matter. At that Discovery Hearing, new Wellpath counsel, having entered an appearance in the case just 4-weeks prior, requested the opportunity to brief the issue. (ECF-116). The Court obliged Wellpath, but indicated that if it allowed briefing, it would also be reconsidering its earlier Order ruling Part III documentation to be privileged. (ECF 115, p. 1). The Court ordered Wellpath to move for a protective order. *Id*. *The crux of this dispute surrounds privilege-related testimony and documents involving Part IIIs of several Wellpath Mortality & Morbidity Reviews – 1 for this case, and 1 for each of 7 other in-custody deaths.*

At the subject October 3, 2024 hearing (combined with *Murray v. Wellpath, LLC, et al.,* 23-cv-1847 due to similarity of issues and timing), Judge Braswell reversed course, ordering production of the various Part IIIs, and otherwise denying the Motion for Protective Order. This Objection follows.

## II. JUDGE BRASWELL'S ORDER, GENERALLY

Judge Braswell rejected all of Wellpath's privilege arguments. The main holding in the Order is that there was no evidence adduced at the hearing that the Part IIIs at issue in this case were ever sent to a Public Safety Organization ("PSO") and thus did not qualify for PSQIA privileges. (ECF 125, pp. 12-15.). While true no such evidence was presented, to hold that the information loses its privileges because of non-delivery is clearly erroneous and contrary to law. The Court goes on to hold that the information is otherwise not PSQIA-privileged due to Wellpath's own policies, that Wellpath recommends improvements to El Paso County/Sheriff as a result of its Part III deliberations and analyses, and finally, and somewhat alternatively, because two of the Part IIIs at issue were not reported to the PSO for over two years after the deaths occurred. With all respect to Judge Braswell, and the amount of effort put into these rulings, each is clearly erroneous and otherwise contrary to law.

## III. ARGUMENT AND CITATION OF AUTHORITY

**A. Submission to a PSO**

In its Order, the Court relies on cases and a reading of the Act to hold that to qualify for the protections of the Act, the Part III information must actually be submitted to a PSO. However, such a reading of the Act is overly narrow and serves to undermine the entire purpose of the PSQIA.

To qualify for the protections of the Act, Part III information must qualify as protected Patient Safety Work Product ("PSWP"). The PSQIA is very specific regarding the types of documents and other items that are eligible to become PSWP and the conditions precedent for that to occur. Specifically, "patient safety work product" is defined as:

> …any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements (or copies of any of this material)
>
> (i) Which could improve patient safety, health care quality, or healthcare outcomes; and
>
> (A) Which are assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented as within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information entered the patient safety evaluation system; **or**
>
> (B) Are developed by a PSO for the conduct of patient safety activities; **or**
>
> (ii) Which identify or constitute the deliberations or analysis of, **or**

identify the fact of reporting pursuant to, a patient safety evaluation system.

42 CFR Part 3 § 3.20(emphasis added); See also 42 U.S.C. § 299b-21(7)(A). The term 'patient safety evaluation System' means the collection, management, or analysis of information reporting to or by a patient safety organization." (42 U.S.C. § 299b-21(6)).

Dr. Christine Mohr's hearing testimony tracked the language of her earlier Declaration, submitted in the *Murray* Case, and submitted into evidence at the hearing as Plaintiff's Exhibit 15, and is attached hereto as Exhibit "2". With one exception, that language, found at Paragraphs 5-13 and 15-18 specifies that in creating the Part IIIs in question, Wellpath followed the Act to a "T" in its quality improvement and patient safety efforts, and its measures to comply with the Act. The lone exception is that, as with Dr. Bazell, Dr. Mohr testified at the hearing that she lacked personal knowledge that the information had in fact made its way to the PSO.

But nothing in the language of the Act requires Patient Safety Work Product to be actually sent to the PSO in qualify for the protections of the Act. *Hacking v. United States of America*, 2:19-cv-14449-AMC (S.D. Fla. April 28, 2021) dealt with the precise issues in this case. There, the Court iterated that 73 Fed. Reg. 70742 specifically addresses the issue of protection of such information in a section entitled "When is Information Protected?" There, the Regulation states at length why such

information is protected prior to submission to a PSO, indicating, **"[t]he information would become patient safety product upon collection."** Relying on this and the additional language below, the *Hacking* Court denied compelled production of a document *not* sent on to a PSO, rejecting that delivery is relevant. (*Id*. at 82).

The Final Rule clarifies that protected PSWP includes information assembled for reporting. There are other portions of the Final Rule that explain the privilege attaches at the moment it is collected within the PSES. The Final Rule discusses that there was a significant concern with only protecting information once it is reported. Here is an excerpt from the Final Rule 42 CFR 70741:

> The final rule provides that information documented as collected within a patient safety evaluation system by a provider shall be protected as patient safety work product…The information would become patient safety work product upon collection…Protection that begins from the time of collection will encourage participation by providers without causing significant administrative burden. The alternative is a system that encourages providers to indiscriminately report information to PSOs in a race for protection, resulting in PSOs receiving large volumes of unimportant information. By offering providers the ability to examine patient safety event reports in the patient safety evaluation system without requiring that all such information be immediately reported to a PSO…. and lessens the need to maintain duplicate information for different needs.

In this case, Dr. Mohr testified (both live and via affidavit) similarly to the *Hacking* affiant on the identified relevant issues. *Hacking* held that non-delivery to the PSO was not fatal to Wellpath's claim of privilege. The main difference in the

two Orders is that in *Hacking* the Court gave credit to the conjunctive "or" found in the statute at 42 U.S.C. §299b-21(7)(A)(i) just prior to U.S.C. §299b-21(7)(A)(ii), but in this case the Court (as have others), gave no such legal effect to the words.

U.S.C. §299b-21(7)(A)(ii) does not require submission to the PSO *if* the information constitutes "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements" that "identify or constitute the deliberations or analysis of…a patient safety evaluation system." That is precisely the Part III information at issue here, as well as the testimonial issue being sought re same.

**B. The Evidence Showed Part III Contains Patient Safety Information Gathered as Part of PSES for the Purpose of Reporting it to a PSO and to hold otherwise is Clearly Erroneous and is Contrary to Law**

**a. Wellpath's Written Policies; Patient Improvement Plans**

In both the hearing and the Order the Court expressed concern that Wellpath's own written policies mention that the Part III review is discussed at the Administrative Review with the CQI Committee, at which County personnel are present. (ECF 125, pp. 12-1). The Court interpreted that requirement to mean that Part III of the mortality and morbidity review is discussed at that time, although all record evidence is to the 100% to the contrary.

To be clear, the only Part IIIs being sought in this case are related to specific deaths occurring at the El Paso County Jail, nowhere else. To be further clear, Dr.

7

Mohr participated in every one of those reviews and authored the entire reports for the purpose of them ultimately being sent to the PSO.  Only the identified Part IIIs here, only potential testimony related to the identified Part IIIs are in play here. And the only evidence with respect to the microcosmic world of these documents and future testimony is that the content thereof was never used or disclosed during the administrative processes in which County personnel are in attendance.

Dr. Mohr's unequivocal and unimpeached testimony was that she did not disclose Part III information to anyone outside the PSES process (see ECF 125, p. 13; Exhibit 2 to this Objection. Paragraphs11-16), and the fact Plaintiff offered no evidence to contradict that testimony other than to point to the policy, *which does not require disclosure*(See Plaintiff's hearing Exhibit 15) shows this information is privileged.

The Court also found that in creating Patient Improvement Plans ("PIPs"), Dr. Mohr creates a Part III "derivative" – the information obtained and gleaned from the Part III review process being utilized in coming up with recommendations made to the County for improvements.  But the ability to provide improvement advice, as opposed to what all went into coming up with that advice, is the very lynchpin of the entire Act.  It is exactly what the Act is for, its entire intent, the whole purpose for its creation.  There is no language in the Act that suggests if improvements are made

as a result of the PSEP process, the protections of the Act disappear. There simply would be no Act if that were the case.

The very concerns Judge Braswell had with Dr. Mohr's participation in the County's administrative review after personally having participated in and authored the Part III documentation were specifically addressed in *Grayson v. County of Fresno,* Superior Court of California – County of Fresno, Case no. 22CECG01628. (Exhibit "3" to this Objection). As here, that Court noted the absence of evidence that privileged information was shared, rejecting as speculation the same type of reasoning offered by Plaintiff and analyzed here by the Magistrate Court. *Grayson*, at *4-5 (pp. 3-4 of the produced PDF).

And that is all Plaintiff had presented to the Court – speculation. Dr. Mohr's testimony regarding her not having shared Part III information with the County at any stage stands completely unimpeached. And what is left is Plaintiff's "mere[] speculati[on] that Wellpath must have shared the information because its employees attended a meeting about decedent's death with County employees."

**C. Timing of Two Submissions**

The Magistrate Judge was also concerned with the fact that in two instances, (had in fact the relevant Part IIIs been submitted to the PSO), over two years passed between the critical events and the reporting to the PSO. The Court reasoned the time gap "severely undercut[] the notion that Part III is "assembled or

developed…*for* reporting to a [PSO]." (Cit. omitted; emphasis in original), further noting that the timing of the submissions "curiously" aligned with the joining of the Part III issues in that case. Case law and the language of the Act itself cut directly against this reasoning. As mentioned, *supra*, the very language of the Act belies the notion that in order to qualify as PSWP the information must in fact have been reported to a PSO, and the Final Rule specifies that the information becomes PSWP "upon collection." The *Grayson* Court, *supra*, rejected the proposition that delays in reporting constitute a misstep stripping a provider of its PSQIA protections.

### D. Monell

Finally, the Court held that Part III information is relevant to Plaintiff's *Monell* claim, expressing concern over how else a plaintiff could prove her/his obligation to prove pattern and practice sufficient to impose Constitutional liability. *Monell v Department of Social Services of the City of New York,* 436 U.S. 658 (1978). In doing so, the Court relied on Judge Varholak's ruling in *Laintz v. Correctional Health Partners,* Case No. 18-cv-02122-DDD-STV, Doc. 76-3, at 19:22-20:15, in which that court questioned how one makes out a *Monell* claim without this information.

There is no Congressional or even District Court level of which counsel is aware) creating an exception to the PSQIA for claims brought under *Monell* and the ruling contrary to the law here was clearly erroneous.

Respectfully submitted this 25th day of October, 2024.

                **HALL BOOTH SMITH, P.C.**

                */s/ Phillip E. Friduss*
                PHILLIP E. FRIDUSS
                ROBIN E. DAITCH

                *Counsel for Defendants Wellpath, LLC*
                *and Makayla Patterson*

## **TYPE VOLUME LIMITATIONS**

       I hereby certify that the foregoing pleadings complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| THE ESTATE OF CRISTO JESUS CANETT, By and through its personal representative Elizabeth Naranjo;<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH, LLC; THE BOARD OF COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO; SHERIFF JOSEPH ROYBAL, in his official capacity; ANTHONY LUPO, individually; MICHELLE SILVA, individually; MAKAYLA PATTERSON, individually; JENNENE SCOTT, individually;<br><br>Defendants. | Civil Action No.:<br>23-cv-01211-DDD-MDB |

## CERTIFICATE OF SERVICE

This is to certify that on this day I have electronically filed the foregoing **DEFENDANT WELLPATH, LLC'S AMENDED/SUBSTITUTE OBJECTION TO MAGISTRATE JUDGE'S OCTOBER 11, 2024 DISCOVERY ORDER** with the Court using the CM/ECF System and served a copy via the e-filing system, which will automatically serve the following parties:

<div style="display: flex;">

<div>

Anna C. Holland-Edwards
Erica Tick Grossman
Dan Weiss
Rachel Claire Kennedy
**HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC**
1437 North High Street
Denver, CO 80218
anna@hheglaw.com
egrossman@johnhollandlaw.com
dan@hheglaw.com
rachel@hheglaw.com
*Counsel for Plaintiffs*

</div>

<div>

Bryan E. Schmid
Nathan James Whitney
Steven Ward Martyn
**EL PASO COUNTY ATTORNEY'S OFFICE**
200 South Cascade Avenue, Suite 150
Colorado Springs, CO 80903
bryanschmid@elpasoco.com
nathanwhitney@elpasoco.com
stevenmartyn@elpasoco.com
*Counsel for Bd of Cty Commissioners of the County of El Paso, Colorado*

</div>

</div>

Brandon Philip Hull
Jeremy Brent Goldblatt
Lindsey Warren Jay
**OVERTURF MCGATH & HULL, P.C.**
625 East 16th Avenue, Suite 100
Denver, CO 80203
bph@omhlaw.com
jbg@omhlaw.com
lwj@omhlaw.com
*Counsel for Sheriff Joseph Roybal*

Ryan Douglas Doherty
Erik Lamphere
**COLORADO SPRINGS CITY ATTORNEY'S OFFICE**
30 South Nevada Avenue, Suite 501
Colorado Springs, CO 80903
ryan.doherty@coloradosprings.gov
erik.lamphere@coloradosprings.gov
*Counsel for Jennene Scott*

Paul Andrew Faraci
**FARACI LEASURE, LLC**
4500 Cherry Creek Drive South
Suite 675
Denver, CO 80246
pfaraci@faracileasure.com
*Counsel for Anthony Lupo*

Christopher R. Jones
**GORDON REES SCULLY MANSUKHANI**
555 Seventeenth Street, Suite 3400
Denver, CO 80202
crjones@grsm.com
*Attorney for Defendant Michelle Silva*

Respectfully submitted this 25th day of October, 2024.

                              **HALL BOOTH SMITH, P.C.**

                              */s/ Phillip E. Friduss*
                              PHILLIP E. FRIDUSS
                              ROBIN E. DAITCH
                              *Counsel for Defendants Wellpath, LLC*
                              *and Makayla Patterson*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1755
Tel: 404-954-5000
Fax: 404-954-5020
E-Mail: pfriduss@hallboothsmith.com
           rdaitch@hallboothsmith.com