IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 23-cv-1211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
By and through its personal representative Elizabeth Naranjo;

    Plaintiff,

v.

WELLPATH, LLC; *et al.*

    Defendants.

---

**RESPONSE TO WELLPATH'S MOTION TO STAY COMPLIANCE (DOC #130)**

---

### I.    INTRODUCTION

> The intent of the system established by the Patient Safety Act is to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities. For example, a provider may have an external obligation to maintain certain records about serious adverse events that result in patient harm. The document the provider prepares to meet its requirement about such adverse events is not PSWP.

HHS Guidance, 81 FR 32655 at *32656.

Wellpath does not generate mortality reviews because it belongs to a Patient Safety Organization ("PSO") – it belongs to a PSO because it wants to hide the mortality review reports it is independently required to create. As was thoroughly briefed and argued over the last seven months (in this case and others before the Court), Wellpath attempts repeatedly, in jurisdictions all over the country, to avoid producing mortality reviews by misusing the protections granted by Patient Safety and Quality Improvement Act ("Act") in the precise ways the Department of Health and Human Services ("HHS") warns against:

1

> HHS believes that most providers that engage with a PSO are doing so to further learning about patient safety and health care quality, consistent with the intent of the Patient Safety Act. Nevertheless, we are concerned about two ways that some providers may be attempting to misuse the Patient Safety Act protections to avoid their external obligations . . . First, some providers with recordkeeping or record maintenance requirements appear to be maintaining the required records only in their PSES and then refusing to disclose the records, asserting that the records in their PSES fulfill the applicable regulatory requirements while at the same time maintaining that the records are privileged and confidential PSWP. Second, some providers appear to develop records to meet external obligations outside of the PSES, place a duplicate copy of the required record into the PSES, then destroy the original outside of the PSES and refuse to disclose the remaining copy of the information, asserting that the copy is confidential and privileged PSWP. **The Patient Safety Act was not intended to give providers such methods to evade their regulatory obligations** . . . **We note that it would be improper to maintain records collected for external reporting purposes solely within a PSES because this scenario would be a misuse of a PSES**.

HHS Guidance, 81 FR 32655, at *32657-58.

As much as Wellpath wants the Morbidity and Mortality Review Reports ("MMRRs") it generates to satisfy contract, policy, and accreditation requirements to be privileged, the Court correctly found they are not and that thorough, well-supported finding is unlikely to be altered. Moreover, Wellpath will not suffer any prejudice, let alone irreparable injury, if required to produce the reports before Judge Domenico considers Defendant's Objection. True, Plaintiff's counsel will see the MMRRs, and deponents may be asked questions about their contents, but Wellpath can move to exclude such evidence and testimony before it ever reaches a jury, and the Protective Order in this case will protect against broad disclosure of Wellpath's mortality review processes. Wellpath has not met its burden, Plaintiff will be injured by a stay, and prompt compliance with the Court's Order is in the public interest. Thus, Wellpath's motion to stay enforcement of this Court's Order pending District Court review ("Motion") should be denied and the Court should further Order the MMRRs produced by November 15, 2024.

2

## II. LEGAL STANDARD

"A stay of a magistrate judge's discovery order should be granted sparingly. Allowing such stays as a matter of course would encourage the filing of frivolous objections and grind the magistrate judge system to a halt:

> Discovery matters have been delegated to the magistrate judges in order to promote judicial efficiency and speedy resolution of pretrial disputes. . . . Ill-considered 'strategic' objections to a magistrate judge's orders threaten to undermine these goals and do a disservice to the parties, who presumably are themselves primarily interested in a speedy resolution of their disputes."

*Stanisavljevic v. Standard Fire Ins. Co.*, No. 1:22-cv-03287-RM-SBP, 2024 U.S. Dist. LEXIS 114923, at *3-4 (D. Colo. June 27, 2024) (internal quotes and cites omitted). Courts consider four factors in deciding whether to issue a stay: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at *3.

The first two factors are the most critical. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "A stay of a magistrate judge's discovery order may be appropriate where there is a serious issue about the propriety of the ruling ***and*** where a failure to render a stay could result in serious, irreversible injury to the party seeking the stay." *Granato v. City & Cty. of Denver*, No. 11-cv-0-304-MSK-BNB, 2011 U.S. Dist. LEXIS 40981, at *5 (D. Colo. Apr. 7, 2011). But a stay "is not a matter of right, even if irreparable injury might otherwise result." *Mondragon v. Nosrak LLC*, No. 19-cv-01437-CMA-NRN, 2020 U.S. Dist. LEXIS 248617, at *8 (D. Colo. May 26, 2020) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular

3

case." *Id.*, at *8-9. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

### III.   ARGUMENT

#### A. Wellpath is Unlikely to Succeed on the Merits of its Objection.

A party seeking review of a magistrate judge's non-dispositive ruling under Fed. R. Civ. P. 72(a) "faces a daunting standard of review." *Playup, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1096 (D. Nev. 2022). A district court is required to "defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997), *cert. denied*, 522 U.S. 914, 118 S. Ct. 298 (1997). "[I]t is important to keep in mind that clear error is established based on the existence of controlling legal authority; a magistrate judge is not bound by the decisions of another magistrate judge and the mere existence of persuasive authority contrary to a magistrate judge's order does not establish clear error." *Playup*, 635 F. Supp. 3d at 1096-97; *see Schueneman v. Arena Pharms., Inc.*, No. 3:10-cv-01959-CAB-BLM, 2017 U.S. Dist. LEXIS 134461, *6 (S.D. Cal. Aug. 21, 2017) (finding objection to magistrate judge's non-dispositive order "frivolous" and collecting cases that a magistrate judge does not clearly err when there is no controlling authority to the contrary).

"The formidable standard of review, in turn, means that a party seeking a stay pending resolution of its objection to a magistrate judge's non-dispositive ruling is generally unable to make a strong showing of likely success on the merits of the objection." *Playup*, 635 F. Supp. 3d at 1096-97. "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." 12 Charles Alan Wright et al., *Federal Practice &*

4

*Procedure* § 3069, at 350 (4th ed. 2018); *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1177 (D.N.M. 2019).

Here, the Court considered several rounds of briefing [1] and oral argument on the applicability of the PSQIA to Wellpath's MMRRs prior to ordering an evidentiary hearing which lasted close to four hours and resulted in a thorough 15-page Order holding Wellpath failed to meet its burden of establishing PSQIA privilege over the MMRRs [Doc. 125]. The Order includes ample legal authority including the relevant statute, cases from around the country dealing with the precise question of the PSQIA's applicability to mortality review reports, and Orders from this District finding, under similar circumstances, that the PSQIA privilege does not protect mortality review reports and ordering their disclosure. It summarizes, in detail, the evidence and testimony received at the hearing, considers the ways in which each subsection of the MMRRs was utilized, and addresses not only the extent to which the reports were shared with County staff, and their belated submission to a PSO, but also the various purposes for which the MMRRs were created.

In straining to undercut the Court's factfinding and convince the Court it is likely to succeed on the merits, Wellpath misconstrues what the law requires and what it protects, mischaracterizes and avoids large portions of the Court's Order, and attempts to recast the strength of its evidence and credibility of its witnesses. Even accepting these mischaracterizations and omissions, Wellpath is unlikely to succeed in undoing the Court's ruling.

---

[1] Including reviewing Orders from the District of Colorado and caselaw surveys from other jurisdictions. *See* Doc. # 69 (Joint Status Report); 76-77.2 (Joint Status Report & Exhibits); 89-89.4 (Plaintiff's Discovery Brief and Exhibits); 92 (Wellpath's Discovery Brief); 95 (March 5, 2024 Hearing Transcript); 114 (May 6, 2024 Hearing Transcript); 116 (August 20, 2024 Hearing Transcript); 117 (Motion for Protective Order); 119 (Response to Motion for Protective Order); 125 (Order denying Protective Order); 128 (October 3, 2024 Evidentiary Hearing Transcript). The Court also considered extensive briefing and argument on the very same topic in the *Murray* case.

Rather than citing any contrary controlling authority, Wellpath simply attempts another bite of the PSQIA apple, advancing modified arguments and decrying the ruling as "frustrat[ing] the intent of the Act." But the unambiguous intent of the Act is "to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities," and "the Patient Safety Act does not permit providers to use the privilege and confidentiality protections for PSWP to shield records required by external recordkeeping or reporting requirements." HHS Guidance, 81 Fed. Reg. 32655-01, at *32656, 32657. In other words, in order for PSWP privilege to attach, the records must have been generated *with the intent* not to use them for any purpose other than reporting to a PSO. *See* HHS Guidance, 81 FR 32655, at *32656 ("[U]ncovering the purpose for which information is prepared can be a critical factor in determining whether the information is PSWP. Since some types of information can be PSWP or not depending upon *why* the information was assembled or developed, it is important for providers to be aware of whether information is prepared *for reporting to a PSO*."); *Garcia v. Bd. of Cty. Comm'rs for the Cty. of Doña Ana*, No. 21-485 DHU/GJF, 2023 U.S. Dist. LEXIS 146, at *5 (D.N.M. Jan. 3, 2023) (The privilege only "applies to health-care-related information compiled *exclusively* for PSQIA purposes.").

Wellpath's entire argument, that privilege was never waived through sharing or lack of submission to a PSO, hinges on the inaccurate premise that PSWP privilege ever attached. Defendant urges this Court it is likely to succeed in convincing Judge Domenico to adopt the approach employed in the non-binding Order in the *Hacking* case, and incredibly argues that the "main difference" between this Court's Order and the *Hacking* court's Order "is that in *Hacking* the Court gave credit to the conjunctive 'or' found in the statute," but this Court "gave no such

6

legal effect to the word." Motion at p. 6. Apparently, Defendant missed that the Court actually emphasized the conjunctive "or" in its Order at page 3, and simply disregards large swaths of the Order wherein the Court's analysis focused not on submission to a PSO, but on the MMRRs' dual purpose creation, concluding:

> Wellpath's collection, development, and maintenance of the MMRRs was not merely for the purpose of reporting to a PSO, but also for the purpose of fulfilling its obligations to the County. Its loose framework is a "kill two birds with one stone" approach that makes it impossible to separate the collection of information for the PSO, from the collection of information for the County. What's more, the documentary evidence, arguments, and testimony from Wellpath's own witnesses, convinces this Court that fulfilling its obligations to the County was actually the *primary* purpose of this framework. And in the case of Mr. Williams and Ms. Gibbs, submission to a PSO appears to be a distant afterthought.

Order at pp. 14-15.

Wellpath insists that, in spite of express, nondiscretionary, contractual, policy, and accreditation obligations, it did not share the MMRRs with "anyone outside of the Wellpath family." Not only is the Court's conclusion that they shared the information with County employees through derivative reports such as PIPs sound, other evidence in the record (such as CQI minutes and Wellpath's own mortality review policy) support the reasonable inference that the mortality reviews themselves were actually shared with County personnel. And the fact that two and a half years passed before Wellpath reported Mr. Williams' and Ms. Gibbs' deaths to the PSO not only means the MMRRs are not PSWP under the reporting pathway, but also, as expressly articulated in the Order, "severely undercut[s] the notion that Part III is 'assembled or developed…*for* reporting to a [PSO].'" Belatedly submitting records that were not created for the sole purpose of reporting to a PSO does not make such records PSWP. *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1209 (M.D. Ala. 2016) ("[I]nformation that is not developed for the purpose of reporting

7

to a patient safety organization does not become privileged merely because it is in fact reported to one."). In short, Wellpath has failed to make a strong showing of likely success on the merits of its objection.

### B. Wellpath Will Not be Harmed Absent a Stay.

The party seeking a stay must make a "clear showing" of irreparable harm. *Murthy v. Missouri*, 144 S.Ct. 7, 8 (2023) (JJ. Alito, Thomas, Gorsuch dissenting). "[S]imply showing some 'possibility of irreparable injury,'" is not enough. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009). Rather, Wellpath must demonstrate that irreparable harm is likely. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). While Judge Boland did hypothesize, in *Nau Holdings*, that "a stay may be appropriate where enforcing the existing discovery order would require the disclosure of arguably privileged information, trade secrets to a competitor, or the like," a finding of irreparable harm is not a foregone conclusion even in those circumstances. *Nau Holdings, LLC v. Dlorah, Inc.*, No. 08-cv-02743-CMA-BNB, 2010 U.S. Dist. LEXIS 95177, at *4 (D. Colo. Aug. 20, 2010); *see Nikon Corp. v. GlobalFoundries United States, Inc.*, No. 17-mc-80071-BLF, 2017 U.S. Dist. LEXIS 177899, at *5-6 (N.D. Cal. Oct. 26, 2017) (finding production of sensitive information would not cause irreparable harm given existence of protective order issued in that case).

Defendant has failed to establish that it will suffer irreparable injury absent a stay. Wellpath argues in its Motion that absent a stay the "specifics of Wellpath's confidential processes would be open to review by anyone, adverse litigants and competitors alike." [Doc. #130, p. 15]. However, the burden is on Wellpath to state sufficient justification for a stay, and this burden cannot be met with conclusory statements like "confidential processes will be jeopardized." *See U.S. v. Various Tracts of Land in Muskogee and Cherokee Counties*, 74 F.3d 197 (10th Cir. 1996) ("Appellant's

8

conclusory argument…is insufficient to demonstrate that he…will be irreparably harmed in the absence of a stay.").

Wellpath's concerns regarding broad disclosure of "confidential processes" are entirely unfounded. Presuming such documents are stamped confidential, any disclosure would be subject to the Protective Order issued in this case. *See* Protective Order, Doc. #31. And, in the unlikely event that Judge Domenico finds the MMRRs are privileged, Defendant will have ample opportunity to exclude the reports and testimony regarding the same from presentation to a jury and Plaintiff's counsel can be ordered to destroy any copies. Wellpath will not suffer any harm, let alone irreparable injury, if required to disclose the MMRRs now.

### C. A Stay Would Substantially Injure Plaintiff and is Contrary to the Public Interest.

Additionally, issuance of a stay will substantially harm Plaintiff and is contrary to the public interest. This case has been on file for close to eighteen months, and the discovery cutoff was in August. Plaintiff has already had to delay the completion of discovery and related expert disclosures multiple times, and an otherwise unwarranted stay of this discovery will further delay the final preparation of the case for trial.

A stay at this point would allow Defendant to continue to enjoy the benefits of its discovery gamesmanship to the detriment of advancing this case concerning an unnecessary and painful death toward trial. *See* Doc. #125, p. 8, n. 9. Wellpath faces serious liability around the country, and routinely misuses the PSQIA and plays protracted discovery games to delay facing injured parties in Court. *See* Doc. #119 (collecting Wellpath PSQIA cases); **Ex. 1**, *Hirsch v. Will County, et al.* Motion to Compel, pp. 12-15 (collecting cases where Wellpath was sanctioned for discovery misconduct and requesting expedited ruling due to prospect of bankruptcy); *see also Hirsch v. Will*

9

*County, et al.*, No. 19-cv-07398, Doc. #376 (N.D. Ill. Oct. 15, 2023) ("Plaintiff's effort to obtain discovery from Wellpath has resulted in a protracted, energy draining battle that, in turn, has spawned a voluminous motion practice."); *Id.* at Doc. #486 (N.D. Ill. May 24, 2024) ("Since February 2024, the Court has repeatedly ordered Wellpath to make certain productions by certain dates to little avail . . . Due to this persistent and willful noncompliance, the Court is considering the recommendation of Rule 37(b)(2)(A) sanctions to the District Judge, up to and including the entry of default.").

As a result of the long delay interposed by Wellpath in obtaining these records, the 30(b)(6) deposition of Wellpath in this case has been severely delayed and repeatedly rescheduled, even since the discovery cutoff. Dr. Mohr's fact deposition was scheduled to take place shortly after the October 3rd hearing, as she authored Part III of Mr. Canett's MMRR, and was involved in the record separate from her role as Health Services Administrator. She was also scheduled to testify as Wellpath's 30(b)(6) designee soon after the hearing. However, both depositions were cancelled at the hearing to allow time for the Court's written ruling. Following the Court's Order denying the protective order and ordering the MMRRs produced, Plaintiff re-noticed the 30(b)(6) deposition, which was first requested in May of 2024, for November 21, 2024. Given the hurdles Plaintiff has faced in getting this deposition scheduled to date, and the upcoming Summary Judgment deadline, Plaintiff intends to move forward on November 21st and leave the deposition open if the MMRRs have not been produced. Plaintiff should not have to bear the expense, frustration and delay associated with taking Wellpath's corporate designee's deposition on two separate occasions – especially where the Court has already ordered the MMRRs are discoverable and denied the protective order related to this deposition. "Such an unnecessary delay is injurious

to [Plaintiff]; to the public's interest in the efficient operation of the courts; and to the court's efforts to achieve the objectives of Rule 1, Fed. R. Civ. P." *Nau Holdings, LLC*, 2010 U.S. Dist. LEXIS 95177, at *5.

## IV. CONCLUSION

For the foregoing reasons, Wellpath's Motion for Stay should be denied and the Court is further asked to Order that Wellpath provide the compelled documents by November 15, 2024.

Respectfully submitted this 2nd day of November 2024.

/s/ Rachel Kennedy
Rachel Kennedy
Anna Holland Edwards
Erica Grossman
Dan Weiss
HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
1437 High Street
Denver, CO 80218
rachel@hheglaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2024, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

| | |
|---|---|
| Nathan J. Whitney | Robin E. Daitch |
| Bryan E. Schmid | Phillip E. Friduss |
| Steven Martyn | HALL BOOTH SMITH, P.C. |
| EL PASO COUNTY ATTORNEY'S OFFICE | rdaitch@hallboothsmith.com |
| nathanwhitney@elpasoco.com | pfriduss@hallboothsmith.com |
| bryanSchmid@elpasoco.com | *Attorneys for Defendant Wellpath* |
| stevenmartyn@elpasoco.com | |
| *Attorneys for Defendant Roybal* | |

11

Brandon P. Hull  
Jeremy B. Goldblatt  
Lindsey W. Jay  
OVERTURF, MCGATH & HULL, P.C.  
bph@omhlaw.com  
jbg@omhlaw.com  
lwj@ohmlaw.com  
*Attorneys for Defendant Roybal*

Christopher R. Jones  
GORDON REES SCULLY MANSUKHANI  
crjones@grsm.com  
*Attorney for Defendant Silva*

Paul A. Faraci  
Charles Wood  
FARACI LEASURE, LLC  
pfaraci@faracileasure.com  
cwood@faracileasure.com  
*Attorneys for Defendant Lupo*

*/s/ Brooke Thiele-LaForest*  
Brooke Thiele-LaForest, Paralegal

12