IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 23-cv-1211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
By and through its personal representative Elizabeth Naranjo;

      Plaintiff,
v.

WELLPATH, LLC; *et al.*

      Defendants.

---

**PLAINTIFF'S EMERGENCY MOTION FOR TERMINATING SANCTIONS AGAINST DEFENDANT WELLPATH FOR ABUSE OF DISCOVERY**

---

      The American judicial system is structured to rely on adversarial parties acting in good faith to discover the factual basis of legal disputes. Contrary to the spirit and letter of the Rules of Civil Procedure, which have been carefully crafted over many iterations to ensure thorough and accurate fact-finding on a reasonably prompt time scale, Wellpath has consistently abused the discovery process. Beginning with its refusal to disclose F.R.C.P. 26 required insurance documents without a court order, Wellpath has improperly withheld relevant evidence, shifted its meritless legal rationales for such withholding, and caused significant delay and expense.

      The discovery process cannot become a playground for one party to experiment with procedural gamesmanship to push off merits-adjudication into the distant future. Such damaging bad faith conduct appears to be the norm for this particular Defendant around the country. F.R.C.P. 1, encapsulating the spirit of Federal Rules of Civil Procedure, declares that courts "should construe and administer the Rules to secure the just, speedy, and inexpensive determination of

1

every action and proceeding." *EEOC v. Original Honeybaked Ham Co. of Ga.*, No. 11-cv-2560-MSK-MEH, 2013 U.S. Dist. LEXIS 26887, *12 (D.Colo. Feb. 27, 2013) (quoting Fed. R. Civ. P. 1). These rules further mandate "discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." *Zbylski v. Douglas Cnty. Sch. Dist.*, No. 14-cv-1676-MSK-NYW, 154 F. Supp. 3d 1146, 1158 (D. Colo. Dec. 31, 2015) (citation omitted). Rule 26(b) thus permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence," so long as it is proportional to the needs of the case. *Id*.

Where a party is unable to abide by the spirit and letter of the rules, and instead acts to frustrate this Court's party-driven factfinding process, "the imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court." *Peshlakai v. Ruiz*, No. CIV 13-0752 JB/ACT, 2014 U.S. Dist. LEXIS 14278, at *59-65 (D.N.M. Jan. 9, 2014) "Bad faith is not required for a district court to sanction a party for discovery abuses. Sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant." *Id*. In addition to Rule 37, Rule 16(f) serves as an accountability mechanism for a party that has abused the discovery process as Defendant Wellpath has in this case. *Original Honeybaked Ham*, 2013 U.S. Dist. LEXIS 26887 at *7-11 (quoting *Mulvaney v. Rivair Flying Serv., Inc.*, 744 F.2d 1438, 1440-42 (10th Cir. 1984)).

Here, Wellpath's goal appears to have been to delay the conclusion of the case to avoid financial responsibility. Over the weekend, Bloomberg broke the story that Wellpath plans to file for Bankruptcy. Wellpath's delay may have cost Plaintiff its ability to proceed entirely. The only

sanction that can remedy the prejudice to Plaintiff are terminating sanctions and default judgment. Plaintiff requests that this Court invoke its inherent power to manage the discovery process, or its explicit power to do so under Rule 37 or Rule 16, to sanction Wellpath for discovery abuse that has irreparably prejudiced Plaintiff.

## Wellpath's Abuse of the Discovery Process

### i)     *Non-disclosure of F.R.C.P. 26 mandatory disclosure insurance policies*

Wellpath's procedural games began from the start of the case. On July 26, 2023, flouting Rule 26, Wellpath failed to disclose insurance policies. Plaintiff was forced to use a RFP for documents that should have been provided as a matter of course on October 5, 2023. **Ex. 1**, RFP 6.  On November 27, 2023, Wellpath objected to disclosing insurance policies. **Ex. 2.** On February 5, 2024, Plaintiff's counsel conferred again about the missing insurance documents, agreeing to give Wellpath a limited amount of time to reconsider its objection, given that these are obviously mandatory disclosures under Rule 26(a). No such reconsideration occurred, and this Court held a discovery dispute hearing on March 5, 2024. Counsel for Wellpath stated that, while the insurance declaration pages were provided, he was "given instructions [by Wellpath] that the – the agreement will only [be] produced with a Court order." **Ex. 3**, p. 43. This Court ordered disclosure of the policies, but only after Wellpath's meritless obstructionism caused a waste of time and resources. Doc. #73.

### ii)    *Frivolous objection to inspection of Plaintiff's Electronic Medical Record*

Also on October 5, 2023, Counsel served a Rule 34 inspection of Wellpath's EMR system to access Canett's record in its native format, something routine in every case, as Wellpath well knew. **Ex. 1.** Plaintiff followed up on October 23, October 30, and November 1, 2024. **Ex. 4**. Given

3

that Wellpath was no longer going to be the contractor in 2024, the parties set an inspection date before the end of the year. Wellpath initially agreed to a December 5, 2023 inspection, but inexplicably changed its position and objected on November 13, 2023, again requiring a court order to accomplish a basic inspection of Plaintiff's own record. **See Ex. 5**.

This Court quickly held a discovery dispute hearing on November 29, 2023. At this hearing, Wellpath was unable to articulate an actual burden, understandably as there was none, and was ordered to allow the December 5, 2023 inspection. Doc. #51. The inspection was completed, but only after the time- and resource-wasting conferrals, meritless objections, and a discovery hearing on centrally relevant case materials that a party acting in good faith would have simply allowed to be inspected.

Wellpath was not deterred from following this delay playbook in the exact same context, even after this Court's order. Thus, in another §1983 case related to the death of Amy Cross, also handled by undersigned counsel, Wellpath controlled access to that decedent's EMR, as it had taken over the medical contract at Weld County Jail since the decedent's passing. The parties in Cross conferred with nonparty Wellpath about inspecting Cross's EMR, which Plaintiffs and Defendants in that case agreed to do without issue. Throughout December, Wellpath gave the impression that it would facilitate the original record inspection without formal process, and all parties agreed to hold January 11, 2024. However, on the eve of the inspection, Wellpath, not even a party to the Cross litigation, informed the parties that it was not available on January 11, advising that it would "need a formal discovery request of some sort in order to effectuate the requested viewing." **Ex. 6**. On January 10, 2024, Plaintiffs served a subpoena to inspect Ms. Cross's EMR. **Ex. 7**. Wellpath baselessly objected. **Ex. 8**. Due to Wellpath's objection, the inspection did not

4

occur as set. Rather, Magistrate Judge Prose held a discovery dispute hearing on February 20, 2024, wherein counsel for Wellpath represented that, even though this Court had just Ordered a nearly identical inspection in *Canett*, Wellpath required another court Order. Judge Prose engaged in the same lengthy hearing process, ordering the inspection. **Ex. 9**.

   iii) *Assertion, withdrawal, and re-assertion of PSQIA privilege on Parts I&II of Mortality Reviews*

Plaintiff's effort to gather Parts I&II of Mr. Canett's mortality review, as well as mortality reviews from other recent deaths at the El Paso jail, began more than a year ago on October 5, 2023. **Ex. 1**, RFP 13. On November 27, 2023, Wellpath responded with boilerplate objections and asserted PSQIA privilege over Parts I&II of the mortality reviews.[1] **Ex. 2.** In their privilege log, Wellpath only listed Bates pages for Parts I&II as being withheld under PSQIA, and their counsel repeatedly stated in verbal conferrals with Plaintiff that he didn't know if there were any other parts – Wellpath not only baselessly asserted PSQIA to Parts I&II, but tried to hide the existence of Part III altogether. **Ex. 2**. Plaintiff conferred on December 13 and 14, 2023. On January 9, 2024, Wellpath withdrew its objection to producing Mr. Canett's Parts I&II, but continued its objection regarding the mortality reviews of the deaths in El Paso County. **Ex. 10**.

At the second discovery dispute hearing on March 5, 2024, Wellpath admitted in response to questioning that only Part III of the mortality review would be submitted to a PSO, but nevertheless continued to object to the production of Parts I and II. The Court ordered additional conferral and supplementation, as Wellpath had provided no supporting evidence to support its

---

[1] Wellpath also improperly asserted PSQIA privilege in response to RFP No. 10 seeking investigations, deficiency notifications, and communications with the County. **Ex. 2**. Assertion of PSQIA privilege over communications between Wellpath and the county, is far from an even-colorable assertion of privilege and illustrates Wellpath's mindless obstructionism.

5

assertions of privilege. **Ex. 3**. Wellpath knew then Parts I&II were not privileged.[2]

This Court held another discovery dispute hearing, its third, on May 6, 2024, ordering the production of Parts I&II (but not Part III) of other mortality reviews, as to which PSQIA privilege could never even arguably attach. Doc. #94. Again, in *Murray v. Wellpath*, 1:23-cv-1847-GPG-MDB, Wellpath was not deterred from this May 6, 2024 Order, even going so far as to remove the Wellpath lawyer in retaliation for following this Court's *Canett* Order and disclosing Parts I&II of the mortality reviews in the *Murray* case.

The Court held its *fourth* discovery dispute hearing on August 20, 2024. Doc. #115. As set forth below, this fourth hearing was necessary because Plaintiff's request for 30(b)(6) deposition(s) of Wellpath had been languishing for months, without dates being set or objections to topics being raised. At this hearing, Wellpath asked for an opportunity to brief the mortality review issue, on all parts again, which impacted some of the disputed 30(b)(6) topic areas. This Court noted that it was interested in briefing because it faced similar issues with Wellpath in *Murray*. In briefing, now through its third counsel, Wellpath again changed course, re-asserting PSQIA over Parts I&II. Doc. #125, pp. 4-5 (citing Doc. #117).

This Court held its *fifth* Discovery Dispute Hearing (*Canett/Murray* joint hearing) on October 3, 2024. While Wellpath offered supporting affidavits, neither affidavit provided any basis

---

[2] As the Court held at Doc. #125, p. 10 n.12:
> Through its indecision and shifting positions – Wellpath has caused the Court to question whether Part III can be fairly sanctioned off as its own part, such that the dual purpose of Parts I and II would not compromise the purported singular purpose of Part III. Wellpath's written arguments and supporting declarations suggest Wellpath was relying on the nature and character of Part III, to argue that Parts I and II are privileged. [] Said another way, before abandoning their Part I and Part II arguments, Wellpath sought to leverage the purported character and nature of one part (Part III), to protect the other parts (Parts I and II).

for PSQIA protection over Parts I&II of the *Canett* or *Murray* mortality reviews. *Id*. Confronted in court by the fact that the text of these affidavits (and supporting testimony by both doctors) clearly demonstrated Parts I&II were not covered by the PSQIA, Wellpath changed its legal position yet again to conform with the evidence it provided to this Court days before, again withdrawing PSQIA privilege over Parts I&II. Doc. #125, p. 8.

Thus did an entirely unnecessary discovery dispute about basic discoverable and case-central discovery come to an end. Wellpath had no legal basis to assert PSQIA privilege over Parts I&II on November 27, 2023, when done so by Wellpath's first counsel, or on September 6, 2024 by Wellpath's third counsel. Such meritless obstructionism, multiple changes in legal position, and willingness to misleadingly portrait central evidence, caused Plaintiff and this Court needless delay, expense, and waste of resources. Wellpath's repeated conduct reveals contempt for the rules, discovery process, and orders by the Court. As this Court recently wrote in determining that Parts I, II, and III of the mortality reviews were *not* privileged:

> The Court is seriously troubled by Wellpath's approach. Their shifting position on Parts I and II reflects an approach that is at best, scattered, at worst, gamesmanship. Moreover, after the October 3rd evidentiary hearing, the Court was left with the clear impression that Wellpath has never had any basis on which to claim PSQIA privilege over Parts I and II, and yet they have. Wellpath's improper withholding and meritless arguments have caused unnecessary delay and expenditures in this case and others.

Doc. #125, p. 8, ftn. 9. As the Court is aware, the *Murray* counsel only received Parts I&II of the other mortality reviews from Canett's counsel, a few days before the joint hearing the Court set in October, 2024. This Court thus also called out Wellpath's gamesmanship, and waste of party and court resources, in its shifting legal positions on the applicability of PSQIA in *Murray*. Doc. #163, p. 5.

7

      **iv)**    *Wellpath's multiple changes of counsel just weeks before discovery cutoff and dilatory discovery practices prevented Plaintiff from taking 30(b)(6) depositions*

On May 24, 2024, Plaintiff requested a 30(b)(6) deposition on four topics. **Ex. 11**. After no response, counsel followed up, leaving two voicemails to Wellpath's counsel the week of June 10, 2024, also with no response. On June 18, 2024, counsel followed up again. On June 20, nearly a month after receiving the 30(b)(6) notice, Wellpath's first counsel responded that he had three separate designees in mind and would work on dates. On June 21, Plaintiff's counsel sent an email offering *18* dates in July and August. **Ex. 12**. A week later, Wellpath counsel responded that he had sent the proposed dates to Wellpath and was waiting for a response. Wellpath never responded to any of these dates. **Ex. 13**.

After belatedly responding about 30(b)(6) depositions, Wellpath's first attorney withdrew and was replaced for most of July by its second attorney, just weeks before the operative discovery cutoff. Doc. ##101, 103. Despite being informed of this outstanding and pressing issue, Wellpath's second attorney also wouldn't respond or set a date. This second attorney was replaced by a third on July 28, 2024. Doc. #105. For the first time, the third attorney objected to the proposed topics.

Another discovery hearing was thus required. In the fourth Discovery Dispute hearing on August 20, 2024, this Court ordered streamlining of one proposed topic, but otherwise allowed the 30(b)(6) process to move forward. Wellpath's third counsel continued to state that he saw three designees and would cooperate on setting dates. Doc. #115. However, Wellpath's third counsel also asked for a chance to restart the debate on PSQIA privilege. This renewed discovery fight over the mortality reviews, a topic of the 30(b)(6) deposition, was another vexatious way to postpone the 30(b)(6).

8

Behind all this delay, on the surface caused by a lawyer's dilatory response, non-conferral, or re-starting of old discovery fights, is the lawyers' client Wellpath. As a very experienced litigant, Wellpath well understands the effect of swapping out lawyers in the middle of a 30(b)(6) conferral process. Wellpath knows that the new lawyer will need and get time to come up to speed, and re-set Plaintiff to step one. This has been very effective way to avoid having a corporate representative testify under oath – so effective that *no 30(b)(6) depositions* have been taken.

> v) ***Refusal to Comply with Court Order of the requested mortality reviews***

In the May 6, 2024 hearing, the Court found that Parts III of the requested mortality reviews were privileged, based on the affidavits submitted by Wellpath, affidavits which were later proved to be misleading and unsupported. After extensive briefing and testimony at a hearing, it was clear that Wellpath never had any basis to assert PSQIA privilege over even Part III of the mortality reviews, as there was no evidence it even submitted them to any PSO *at any point*. The Court found that the PSQIA privilege did not apply, ordering their full production. Doc. #125. In service of its goal of delay, Wellpath still refuses to comply with the Court's Order, baselessly requiring additional briefing on this well-trod territory. See Doc. ##130, 139, 140.

> vi) ***Dilatory and misleading responses to RFP No. 8, and ongoing refusal to produce staffing documents ordered to be produced***

Wellpath's staffing, or rather, its *under*staffing, of the jail and the effect on its medical care is central to this case. Wellpath contracted to provide specific numbers of staff. And just as importantly, Wellpath contracted to provide *levels of licensure* among the staff – specifically, four RNs on every shift. **Ex. 14**; **Ex. 15**, Silva Depo, 78:20-79:21; **Ex. 16**, Patterson Depo, 24:10-18, 40:18-42:4. This makes sense because Colorado law requires that an RN supervise LPNs. LPNs are practicing illegally and dangerously outside the scope of their license when they act as a

9

"charge nurse" at the Jail, as involved caregivers here agree. **Ex. 15,** 30:18-37:2, 39:18-43:11, 47:17-48:5, 221:5-9;[3] **Ex. 16**, 174:9-179:1; **Ex. 17**, Lupo Depo, 27:17-28:18

Wellpath's contractual promises about staffing were not remotely fulfilled. Testimony has made it abundantly clear that there were almost *never* RNs on shift at night. **Ex. 15**, 78:20-79:21, 128:5-129:16; **Ex. 16**, 24:10-18, 40:18-42:4. Rather, it has become clear that LPNs were cajoled, pressured, and even "induced" by a five-dollar shift-related "bonus" to act outside of their licensure as charge nurses. **Ex. 15**, 30:18-37:2, 39:18-43:11, 47:17-48:5; 128:5-129:16; 221:5-9; **Ex. 16**, 174:9-179:1. There was no RN in the building when Canett was in an obvious medical emergency, so LPN Silva illegally took on the role of "charge nurse."

To further prove Wellpath's reckless pattern of understaffing and underlicensure, Plaintiff requested staffing documents – showing who was on each shift, what hours they worked, and how they were licensed – *more than a year ago*. **Ex. 1**, RFP 8. A timeline of the many attempts to obtain this basic information, and Wellpath's various dodges and excuses for non-disclosure of these case-central documents, is attached hereto as **Ex. 18**.

Since October, 2023, Plaintiff has been seeking this information, with expanded focus starting in January of 2024. *Id.* Since the spring of 2024, counsel has discussed "staffing documents" with Wellpath counsel on a weekly basis, by email, text and phone call. *Id.* By summer of 2024, Plaintiff's counsel entered what felt like a begging phase, asking each lawyer before they withdrew from the case to get the information so as not to involve the Court.

---

[3] **Ex. 15**, 36:17-37:2 (e.g. "Q: And so you were aware at the time that Wellpath was requiring you to basically jeopardize patient safety because of their staffing issues; is that fair? A: Correct. Q. and that was persistent day in, day out during your time at Wellpath? A. Yes" [objections omitted])

In conferral, Wellpath has stated the time detail reports don't exist for the full year, while also refusing to produce what does exist. However, in other cases involving Wellpath at El Paso County in roughly the same time frame, Wellpath has disclosed the time detail sheets that Plaintiff here has been asking for since October 2023. **Ex. 19**. Not only has Wellpath delayed production of case-central documents, but it has also been dishonest with Plaintiff's counsel, all while disobeying two separate Orders to produce the staffing information. Doc. ##73, 99-100.

**The Wellpath Playbook - Abuse of the Discovery Process as a Litigation Strategy**

Wellpath has been sanctioned by federal judges across the country for strikingly similar abusive discovery conduct. The following is a non-exhaustive list of Wellpath's litigation strategy:

- *Jones v. Wellpath, LLC, et al.*, No. 22-CV-42-KKC-EBA, Doc. No. 96 (E.D. Ky. May 13, 2024) (ordering extended discovery and awarding attorneys' fees to sanction Wellpath for non-disclosure, for almost a full year, of a case-critical echocardiogram report while allowing Plaintiff's counsel to build her case assuming that no such echocardiogram was done, and noting that Wellpath's own expert seemingly had access to this document to buttress his report).

- *Hirsch v. Will Cnty., et al.*, Order on Plaintiff's 18th Motion to Compel, No. 1:19-cv-7398, Doc. No. 433 (N.D. Ill. Feb. 12, 2024) ("**Plaintiff's effort to obtain discovery from Wellpath has resulted in a protracted, energy draining battle that, in turn, has spawned voluminous motion practice**."); *see also Hirsch,* Minute Order, No. 1:19-cv-7398, Doc. No. 486 (N.D. Ill. May 24, 2024) (describing Wellpath's **"persistent and willful non compliance"** and noting that **"[s]ince February 2024, the Court has repeatedly ordered Wellpath to make certain productions by certain dates to little avail. [] Wellpath has made minimal productions pursuant to these orders…. Further, in defiance of this Court's explicit orders, Wellpath stated on the record that it will not produce documents on a rolling basis and will instead make a single production whenever it is prepared to do so**."); *see also Hirsch*, Order, No. 1:19-cv-7398, Doc. No. 621 (N.D. Ill. Oct. 23, 2024) (discussing Track I, Track II, and Track III sanctions against Wellpath and ordering payment of more than $300,000 in discovery sanctions by Dec. 9, 2024).

- *Hernandez v. Cnty. of Monterey*, No. 13-cv-2354-BLF, 2023 U.S. Dist. LEXIS 171877 (N.D. Cal. Sept. 26, 2023) (Wellpath found in contempt of court for violating 43 of 44 provisions of a settlement agreement and court-approved implementation plans);

11

- *Johnson for Est. of Stewart v. Coos County*, No. 6:19-cv-1883-AA, Doc. No. 119 (E.D. Ore. June 14, 2023) (entering default judgment against Wellpath for violating discovery obligations, and discussing in detail Wellpath's discovery abuses and lack of candor with Plaintiffs and with the Court on pages 6-12 of the Order);

- *Marziale v. Correct Care Sols*, LLC, No. 5:18-CV-86-DPM, U.S. Dist. LEXIS 143872 (E.D. Ark. July 28, 2020) (Magistrate Judge **recommends sanctions and finds that Wellpath had "thrown sand in the gears" of the discovery process** by delaying production of responsive documents for months, failing to disclose responsive documents until deponents themselves did so under examination, providing contradictory information in discovery responses, affidavits, and later affidavits purporting to answer the same questions, and destruction of paper medical file after preservation letter and filing of lawsuit); *see also Marziale*, 2020 U.S. Dist. LEXIS 144952 (E.D. Ark. Aug. 10, 2020) (adopting MJ recommendation and noting that **"…Defendants' many discovery dodges, stumbles, and foot-drags have created the need to do the clean-up discovery,"** and ordering additional sanctions for **Wellpath's "discombobulation of the case in discovery."**).

- *Nall v. Correct Care Solutions, LLC*, No. 19-5289 RJB, U.S. Dist. LEXIS 143969 (W.D. Wash. Aug. 11, 2020) (granting Plaintiffs' motion to compel and sanctioning Wellpath for its failure to respond and lack of candor in some of its written discovery responses); *see also Nall*, No. 19-5289 RJB, U.S. Dist. LEXIS 267561*2 (W.D. Wash. Aug. 31, 2020) (granting motion to clarify Aug. 11, 2020 Order and noting that **"Plaintiffs properly argue that it isn't just that the responses to these requests for production were served in late December and in January, it is the responses that were served 'deliberately mislead' Plaintiffs such that they constituted a failure to respond."**).

- *Est. of Moreno v. Corr. Healthcare Cos, Inc.*, 2020 U.S. Dist. LEXIS 40680 (E.D. Wash. Jan. 8, 2020) (illustrating the self-contradictory information provided by Wellpath in various discovery responses and affidavits, and an 8-month delay in complying fully with a prior discovery order); *see also Moreno*, 2020 U.S. Dist. LEXIS 108370 (E.D. Wash. June 1, 2020) (entering default judgment against Wellpath for spoliation).

- *Early v. Arizona, et al.*, No. 2:16-cv-00031-PHX-SPL, Doc. No. 191 (D. Ariz. May 22, 2018) (ordering sanctions against CHC, one of Wellpath's corporate predecessors, for failing to disclose, after repeated requests and repeated denials that such documents existed, nursing protocols that did in fact exist and were clearly relevant to Plaintiff's claims).

- *Brogdon v. Correct Care Solutions, LLC*, No. 1:16-cv-12 (BJR), 2016 U.S. Dist. LEXIS 186116 (W.D. Pa. Dec. 21, 2016) ("**It appears that Defendants have been waiting until the eleventh hour to identify and deliver documents requested by Plaintiff, which results in disputes and controversies that require further delays. Such behavior**

12

**undermines the fair, efficient administration of justice.");** *see also Brogdon*, 2017 U.S. Dist. LEXIS 91950 (W.D. Pa. May 9, 2017) (granting Plaintiff's request for an adverse inference that missing medical records "would reflect negatively on the supervision provided by supervising physicians to physician assistants" because CCS "failed to fulfill their discovery obligations."); *see also Brogdon*, U.S. Dist. LEXIS 143677 (Aug. 15, 2017) (granting Plaintiff's sanctions request for $45,180 and noting that "**Defense counsel's dilatoriness and failure to produce discovery has been admonished on the record at virtually every stage of this litigation.**")

### Terminating Sanctions and Default Judgment are Appropriate

Wellpath treats courts as playgrounds to try different combinations of its well-honed tactics of obstruction and delay: i) withholding basic documents other litigants would disclose as a matter of course; ii) supporting improper non-disclosure with boilerplate, meritless objections; iii) delaying responses to opposing counsel (thus avoiding conferral and court supervision); iv) shifting legal rationales for improper non-disclosure (again frustrating the conferral/court supervision process); v) misleading and outright dishonesty to opposing parties and courts; and vi) delaying or denying production of clearly relevant documents, causing needless motion practice, court involvement, and months or years of delay. The strong inference to be gleaned from such widespread discovery abuse is that Wellpath simply doesn't think it is, or should be, bound by mandatory rules of civil discovery.

Here, Wellpath has sabotaged discovery for so long and to such a degree that it has quite possibly jeopardized Plaintiff's ability to prosecute this case at all, as over the weekend, press reports have come out indicating Wellpath will shortly be filing for bankruptcy – and inevitably file stay motions in all pending cases. **Ex. 20**.

This Court is not without recourse, however. It has ample discretion and authority to discipline a Defendant that has flippantly treated this Court's discovery process as a playground for various combinations of its commonly used delay tactics:

13

> A district court may issue default judgment as a sanction if a party fails to obey an order or to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(vi). To determine if such a severe sanction is warranted, courts consider the factors set forth in *Ehrenhaus v. Reynolds*: (1) the degree of actual prejudice to the party seeking discovery; (2) the amount of interference with the judicial process; (3) the culpability of the resisting party, (4) whether the court warned the resisting party in advance that dismissal of the action or default judgment would be a likely sanction, and (5) the efficacy of lesser sanctions. 965 F.2d 916, 921 (10th Cir. 1992); *see also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013).

*Kokot v. Maxim Healthcare Servs.*, No. 18-cv-00689-RM-KMT, 2020 U.S. Dist. LEXIS 55782, at *2-3 (D. Colo. Mar. 31, 2020); *see also Est. of Moreno v. Corr. Healthcare Cos, Inc.*, 2020 U.S. Dist. LEXIS 40680 (E.D. Wash. Jan. 8, 2020) (illustrating the self-contradictory information provided by Wellpath in various discovery responses and affidavits, and an 8-month delay in complying fully with a prior discovery order); *Moreno*, 2020 U.S. Dist. LEXIS 108370 (E.D. Wash. June 1, 2020) (entering default judgment against Wellpath for spoliation).

Plaintiff understands that default judgment is a severe sanction, but such a remedy must have its place where "the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 731 (10th Cir. 1991). Wellpath has effectively halted the adversary process. It has employed obstructionist tactics to cause interminable delay, waste of resources, and continued uncertainty about Plaintiff's rights. Throughout discovery, Wellpath has lacked candor with Plaintiff and with this Court. When lack of candor will further its litigation playbook, Wellpath has shown itself happy to mislead and obfuscate. This discovery abuse has not only forced the need to do clean-up discovery and repeatedly extend deadlines, but has also caused Plaintiff and this Court to use limited resources and court time for five discovery dispute hearings.

Given the anticipated bankruptcy filing, Plaintiff suspects that the deliberate delay tactics experienced in this case are part of Wellpath's larger plan to follow in the bankruptcy footsteps of another correctional health care corporation, Corizon Health, Inc. Like Wellpath, Corizon faced hundreds of federal lawsuits from inmates and their families. After losing a number of trials in 2022, Corizon filed for Chapter 11 bankruptcy in Texas, organized a different company to conduct the same business at the same jails. This legal maneuver has been called "the Texas Two-Step" by the Wall Street Journal, commenting that Corizon "expands a legal tactic for cleansing businesses of litigation through bankruptcy." See articles and public statement of the Senate Judiciary Committee. **Ex. 21**.

From the perspective of the end of the discovery period, the tactics and the goal of delay are now clear. Time and again, Wellpath indicates it will behave within the rules as discovery dispute hearings have approached – effectively preying on counsel's desire to avoid the need for judicial babysitting. Time and again, Plaintiff's counsel has represented to the Court that the parties were close to a solution on issues, only to have the hearing pass and Wellpath's commitment to cooperate evaporate.  Delay was the entire game. Delay toward bankruptcy, delay toward spending down Plaintiff's costs fund, delay toward avoiding liability.

Terminating sanctions are the only remedy that will cure the prejudice to plaintiff from Wellpath's bad-faith and refusal to obey Court Orders. *Ehrenhaus*, 965 F.2d at 921. In the face of a bankruptcy proceeding and likely stay, an alternative sanction, such as money for the hundreds of hours wasted, will not cure the prejudice to Plaintiff.

WHEREFORE, the Court is asked to enter default judgment against Wellpath. In the event the Court believes a lesser sanction is appropriate, Plaintiff asks that the Court Order the following:

15

- Order that Wellpath may not file motions for summary judgment;

- Order the adverse inference that: "In 2022, Wellpath intentionally engaged in a widespread practice of understaffing the jail without the required number or licensure of nurses."

Respectfully submitted this 6th day of November 2024.

        /s/ Anna Holland Edwards
        Anna Holland Edwards
        Erica Grossman
        Dan Weiss
        Rachel Kennedy
        HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
        1437 High Street
        Denver, CO 80218
        anna@hheglaw.com
        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2024, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

Nathan J. Whitney
Bryan E. Schmid
Steven Martyn
EL PASO COUNTY ATTORNEY'S OFFICE
nathanwhitney@elpasoco.com
bryanSchmid@elpasoco.com
stevenmartyn@elpasoco.com
*Attorneys for Defendant Roybal*

Robin E. Daitch
Phillip E. Friduss
HALL BOOTH SMITH, P.C.
rdaitch@hallboothsmith.com
pfriduss@hallboothsmith.com
*Attorneys for Defendants Wellpath & Silva*

Brandon P. Hull
Jeremy B. Goldblatt
OVERTURF, MCGATH & HULL, P.C.
bph@omhlaw.com
jbg@omhlaw.com
*Attorneys for Defendant Roybal*

Paul A. Faraci
Charles Wood
FARACI LEASURE, LLC
pfaraci@faracileasure.com
cwood@faracileasure.com
*Attorneys for Defendant Lupo*

        /s/ Brooke Thiele-LaForest
        Brooke Thiele-LaForest, Paralegal