**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 23-cv-1211-DDD-MDB

THE ESTATE OF CRISTO JESUS CANETT,
By and through its personal representative Elizabeth Naranjo;

 Plaintiff,

v.

WELLPATH, LLC; *et al.*

 Defendants.

---

**RESPONSE TO WELLPATH'S OBJECTION TO MAGISTRATE JUDGE'S OCTOBER 11, 2024 DISCOVERY ORDER (DOC # 139 & 140)[1] WITH REQUEST FOR EXPEDITED RULING DUE TO FORTHCOMING WELLPATH BANKRUPTCY FILING**

---

### I. INTRODUCTION & BACKGROUND

Cristo Canett died a painful and preventable death from a perforated ulcer in the El Paso County Jail (CJC) on April 26, 2022. Mr. Canett had taken himself to the Emergency Room on April 24, 2022, for severe back and flank pain, but was arrested as he was waiting to be seen. Doc. #1, ¶¶37-62. When Mr. Canett arrived at CJC, without having been medically evaluated at the ER, his pain worsened, spreading to his abdomen and right shoulder. He reported these known emergency symptoms to medical staff during the nurse intake screening. He was grimacing, crouching down, leaning against the wall, rubbing his abdomen, and generally evincing obvious

---

[1] Defendant Wellpath filed the first iteration of its Objection (Doc. #139) on October 25, 2024. Later that same day it filed a shorter "Amended/Substitute" version of its Objection (Doc. #140), which includes a type volume limitation certification as required by this Court's practice standards. However, on October 28, 2024, Defendant withdrew the Amended/Substitute Objection. *See* Doc. #141. Plaintiff assumes Defendant mistakenly withdrew its Amended Objection rather than its original Objection, and therefore treats Doc. #140 as the operative pleading.

1

extreme pain. Jail medical staff recklessly ignored his serious symptoms while he deteriorated for 24 hours. ¶¶63-81. He became pale, clammy, had labored breathing, required a wheelchair, and was in obvious crisis. Deputies repeatedly called medical, who refused to help, callously saying they were "aware" of his condition. Mr. Canett had a duodenal ulcer, which perforated, finally causing his death from internal bleeding. He was only 48 years old when he died on the floor of the jail. ¶¶82-123.

Plaintiff sued Individual Defendants for violating Mr. Canett's 14th Amendment rights, and brought a *Monell* claim against Wellpath as its deliberately indifferent policies, customs, and training were moving forces in the violation of Mr. Canett's Constitutional rights. In October 2023, Plaintiff served written discovery requests targeted at uncovering Wellpath's policies and customs, including Request for Production 13, which reads:

> Produce all mortality reviews, morbidity reports, root cause analyses, sentinel event reports, or any similar type of internal investigations or reviews relating to any serious injuries or deaths in the El Paso County Jail since the time Wellpath started providing medical services in the facility to the present and in any facility at which Wellpath provides the medical services from 2017-2022. *Please note that there is no federal quality assurance privilege applicable. To the extent you withhold any documents, please state specifically what privilege you are asserting and any authority for that privilege applying in this federal court.*

Defendant Wellpath objected on various grounds, and asserted that the morbidity and mortality reviews are privileged pursuant to the Patient Safety and Quality Improvement Act ("PSQIA").

Over the next several months the Magistrate Judge held several hearings concerning the discoverability of these records and Plaintiff voluntarily limited its request to morbidity and mortality reports for Mr. Canett and just seven other patients who died in the CJC. *See* Doc. #69 (Joint Status Report); #76-77.2 (Joint Status Report & Exhibits); #89-89.4 (Plaintiff's Discovery Brief & Exhibits); #92 (Wellpath's Discovery Brief); #95 (March 5, 2024 Hearing Transcript);

2

#114 (May 6, 2024 Hearing Transcript); #116 (August 20, 2024 Hearing Transcript); #117 (Motion for Protective Order); #119 (Response to Motion for Protective Order); *see also* Order Denying Protective Order ("Order"), Doc. #125 at pp. 4-5 (summarizing procedural history).

On October 3, 2024, Magistrate Judge Braswell held an evidentiary hearing which lasted close to four hours and resulted in a thorough 15-page Order holding Wellpath failed to meet its burden of establishing PSQIA privilege over the morbidity and mortality review reports ("MMRRs"), and ordering them produced. *See generally*, Order; Doc. #145.1 (October 3, 2024 Evidentiary Hearing Transcript). The instant Objection to Magistrate Judge Braswell's Order followed. *See* Objection to Magistrate Judge's Order ("Objection"), Doc. #140.

In its Objection, Wellpath recycles the same arguments Magistrate Judge Braswell already rejected, without citing any contrary controlling authority. Its thin Objection falls far short of demonstrating the Order is clearly erroneous, and should be denied.[2]

## II. LEGAL STANDARD

A party seeking review of a magistrate judge's non-dispositive ruling under Fed. R. Civ. P. 72(a) "faces a daunting standard of review." *Playup, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1096 (D. Nev. 2022). A district court is required to "defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997), *cert. denied*, 522 U.S. 914, 118 S. Ct. 298 (1997). "[I]t is important to keep in mind that clear error is established based on the existence of <u>controlling</u> legal authority; a magistrate judge is not bound

---

[2] Wellpath has drawn this discovery dispute out over most of a year. Its discovery misconduct is portraited more fully in Plaintiff's Motion for Sanctions (Doc. #148). Recent press indicates that Wellpath will be filing for bankruptcy shortly – and inevitably file stay motions in all pending cases. *See* **Ex. 1**. Accordingly, Plaintiff requests an expedited ruling in hopes of obtaining this Ordered discovery in advance of any stay.

3

by the decisions of another magistrate judge and the mere existence of persuasive authority contrary to a magistrate judge's order does not establish clear error." *Playup*, 635 F. Supp. 3d at 1096-97; *see Schueneman v. Arena Pharms., Inc.*, No. 3:10-cv-01959-CAB-BLM, 2017 U.S. Dist. LEXIS 134461, *6 (S.D. Cal. Aug. 21, 2017) (finding objection to magistrate judge's non-dispositive order "frivolous" and collecting cases that a magistrate judge does not clearly err when there is no controlling authority to the contrary).

"To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must…strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." 12 Charles Alan Wright et al., *Federal Practice & Procedure* § 3069, at 350 (4th ed. 2018); *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1177 (D.N.M. 2019).

### III.     MAGISTRATE JUDGE BRASWELL'S ORDER IS MANIFESTLY CORRECT

The PSQIA "created a 'unique and narrow' peer review privilege for work product prepared by a patient safety organization or prepared for, and reported to, a patient safety organization."[3] *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1209 (M.D. Ala. 2016). The statute privileges limited Patient Safety Work Product ("PSWP") that is part of Patient Safety Evaluation System

---

[3] "A patient safety organization ("PSO") is a private or public entity or component thereof that is listed by the Secretary of Health and Human Services as a qualifying entity. 42 U.S.C. § 299b-21(4). All PSOs must meet and maintain certain criteria . . . to become and remain listed as a certified PSO in the Secretary's database. 42 U.S.C. § 299b-24. The Secretary may revoke an entity's PSO certification if the entity fails to meet these criteria. 42 U.S.C. § 299b-24(e)." *Verna L. Johnson v. Cook Cty.*, No. 15 C 741, 2015 U.S. Dist. LEXIS 115868, *16-17 (N.D. Ill. Aug. 31, 2015).

4

("PSES"). [4] *Id.* "[I]nformation that is not developed *for the purpose* of reporting to a patient safety organization does not become privileged merely because it is in fact reported to one." *Id.*

Whether mortality reviews qualify as PSWP is a fundamentally evidence-based inquiry into whether they were "compiled *exclusively* for PSQIA purposes." *Garcia v. Bd. of Cty. Comm'rs for the Cty. of Doña Ana*, No. 21-485 DHU/GJF, 2023 U.S. Dist. LEXIS 146, *5 (D.N.M. Jan. 3, 2023); *Estate of Hultman v. Cty. of Ventura*, No. CV 21-06280-DSF (RAOx), 2022 U.S. Dist. LEXIS 107258, *14-15 (C.D. Cal. May 16, 2022) ("Courts carefully scrutinize the assertion of the PSQIA privilege and generally require factual assertions to be supported by evidence"); *Johnson*, 2015 U.S. Dist. LEXIS 115868, *19-20 (refusing to apply PSQIA privilege where defendant "offered no actual proof to support its assertion that the Report was ever reported—functionally or otherwise—to a [PSO]"); *Herriges v. Cty. of Macomb*, No. 19-12193, 2020 U.S. Dist. LEXIS 146663, *10-22 (E.D. Mich. Aug. 14, 2020). "The instant controversy concerns that review's discoverability which, in turn, requires surveying Defendant's contractual duties and regulatory obligations as a carceral health care provider." *Garcia*, 2023 U.S. Dist. LEXIS 146, *2.

In addition to considering *four* rounds of briefing, affidavits, and proffers on this topic, Magistrate Judge Braswell took testimony from Wellpath's Health Services Administrator and Patient Safety Officer, and evaluated their credibility and personal knowledge. She made a sound ruling based on the evidence before her, which should not be disturbed. *See* Doc. #145.1, October 3, 2024 Evidentiary Hearing Transcript; Order.

---

[4] A patient safety evaluation system is "the collection, management, or analysis of information *for reporting to* or by a patient safety organization." 42 U.S.C. § 299b-21(6). Information that is "collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system" is not PSWP. *Id.* at § 299(b)-21(7)(B)(ii).

A. <u>The Patient Safety & Quality Improvement Act Does Not Protect Records Developed for Purposes Other than Reporting to a PSO.</u>

There are three separate ways information can become protected PSWP: (1) The information is prepared by a provider for reporting to a PSO and it is reported to the PSO, (2) the information is developed by a PSO for the conduct of patient safety activities, or (3) the information identifies or constitutes the deliberations or analysis of, or identifies the fact or reporting pursuant to, a PSES.[5] *K.C.*, 2024 U.S. Dist. LEXIS 155875, *3-5.

"There is a caveat. PSWP 'does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product.' 42 U.S.C. § 299b-21(7)(B)(ii)." *Id.* Reports created for external obligations, such as mandatory requirements placed upon providers by state health regulatory agencies, contract, internal policy, or accreditation standards are not privileged, even if the reports are also shared to a PSO. HHS Guidance, 81 FR 32655-01. Such "dual purpose" records are not PSWP. *See Hultman*, 2022 U.S. Dist. LEXIS 107258, *22-28.

"Per the statutory and regulatory language, PSWP privilege depends on the intent behind producing the alleged PSWP." *Garcia*, 2023 U.S. Dist. LEXIS 146 at *9. The PSQIA "make[s]

---

[5] In its Objection, Wellpath conflates the requirements of the "reporting pathway" and the "deliberations pathway," arguing that it is irrelevant whether the MMRRs were ever reported to a PSO. As the plain language of the Act makes clear, in order for a record to qualify as PSWP under the reporting pathway it must be collected for the purpose of reporting and actually be reported to a PSO. Likewise, to qualify as PSWP under the deliberations pathway, information must be collected for the purpose of reporting to a PSO. *See* definition of PSES at note 3, above. Where information is not submitted to a PSO, it does not qualify as PSWP under the reporting pathway, and where it is not submitted or very belatedly submitted to a PSO, the assertion that it was collected *for the purpose of reporting* is "severely undercut." Order, p. 14.

plain that information is privileged only if it is specifically generated or assembled *for the purpose of reporting to a PSO* or patient safety evaluation system. Information generated or assembled for some other purpose, *even if the information relates to quality improvement measures*, is not considered patient safety work product." *Johnson*, 2015 U.S. Dist. LEXIS 115868 at *21. Records that are "created, maintained, or aggregated into work product as part of existing mandatory information collection activities," are not PSWP. *Garcia* at *14-15.

Thus, where a health care provider has an independent obligation to conduct mortality reviews, the resultant reports are not PSWP because they are produced with the intent to satisfy contract and policy requirements.[6] *Id.* (Defendant healthcare contractor "had an independent contractual obligation with the County to conduct a mortality review that satisfied the NCCHC standards. . . . It follows that Defendant could have produced the mortality review not only for its PSES but also in the event that the County or NCCHC sought information. But Defendant's declaration fails to acknowledge—let alone dispute—the plausibility of dual-purpose intent behind creating the review."); *Dence*, 2022 U.S. Dist. LEXIS 215149 at *8-9 (Wellpath did not carry its burden of establishing application of the PSQIA privilege to the mortality review, where its contract required that a Continuous Quality Improvement Committee review all deaths and share the results with the jail, and it was undisputed that the mortality review was the only review

---

[6] *See*, *e.g.*, Doc. # 89.1-89.4 (D. Colo. Orders compelling production of mortality reviews); *Garcia*, 2023 U.S. Dist. LEXIS 146 (D.N.M. Jan. 3, 2023); *Tanner*, 405 F. Supp. 3d 1115 (D.N.M. 2019); *Johnson*, 2015 U.S. Dist. LEXIS 115868; *K.C.*, 2024 U.S. Dist. LEXIS 155875; *Dence v. Wellpath, LLC*, No. 1:20-cv-00671-CL, 2022 U.S. Dist. LEXIS 215149 (D. Or. Nov. 29, 2022); *Hultman*, 2022 U.S. Dist. LEXIS 107258; *Herriges*, 2020 U.S. Dist. LEXIS 146663; *Crawford v. Corizon Health, Inc.*, No. 17-CV-113, 2018 U.S. Dist. LEXIS 113828 (W.D. Pa. July 10, 2018); *McNamara v. City of Phila.*, No. 20-4570, 2022 U.S. Dist. LEXIS 115630 (E.D. Pa. June 30, 2022); *Penman v. Correct Care Sols.*, No. 5:18-CV-00058-TBR-LLK, 2020 U.S. Dist. LEXIS 131326 (W.D. Ky. July 24, 2020); *Crook v. Dart*, 408 F. Supp. 3d 928, 929-930 (N.D. Ill. 2019).

performed related to the plaintiff's death, indicating that Wellpath intended to use the review for the dual purpose of reporting to a PSO *and* meeting its contractual obligations with the County); *Penman*, 2020 U.S. Dist. LEXIS 131326, *8-9 (Documents are not PSWP if collected/maintained for a purpose other than submission to a PSO or for a dual purpose).

As articulated by the Department of Health and Human Services – the agency responsible for implementing the PSQIA:

> The intent of the system established by the Patient Safety Act is to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities. For example, a provider may have an external obligation to maintain certain records about serious adverse events that result in patient harm. The document the provider prepares to meet its requirement about such adverse events is not PSWP.

HHS Guidance, 81 FR 32655 at *32656.

B.  *Magistrate Judge Braswell Correctly Found Wellpath's MMRRs are not Privileged.*

As the party asserting PSQIA privilege, Wellpath carried the burden of demonstrating the applicability of the privilege, which only applies "to health-care-related information compiled *exclusively* for PSQIA purposes." *Garcia*, 2023 U.S. Dist. LEXIS 146, *5. As detailed above, Magistrate Judge Braswell considered several rounds of briefing[7] and oral argument on the applicability of the PSQIA to Wellpath's MMRRs prior to ordering an evidentiary hearing which

---

[7] Including reviewing Orders from the District of Colorado and caselaw surveys from other jurisdictions. *See* Doc. #69 (Joint Status Report); #76-77.2 (Joint Status Report & Exhibits); #89-89.4 (Plaintiff's Discovery Brief and Exhibits); #92 (Wellpath's Discovery Brief); #95 (March 5, 2024 Hearing Transcript); #114 (May 6, 2024 Hearing Transcript); #116 (August 20, 2024 Hearing Transcript); #117 (Motion for Protective Order); #119 (Response to Motion for Protective Order); #125 (Order denying Protective Order); #145.1 (October 3, 2024 Evidentiary Hearing Transcript). The Court also considered extensive briefing and argument on the very same topic in the *Murray* case.

8

lasted close to four hours and resulted in a thorough 15-page Order holding Wellpath failed to meet its burden of establishing PSQIA privilege over the MMRRs.

The Order includes ample legal authority including the relevant statute, cases from around the country dealing with the precise question of the PSQIA's applicability to mortality review reports, and Orders from this District finding, under similar circumstances, that the PSQIA privilege does not protect mortality review reports and ordering their disclosure. It summarizes, in detail, the evidence and testimony received at the hearing, considers the ways in which each subsection of the MMRRs was utilized, and addresses not only the extent to which the reports were shared with County staff, and their belated submission to a PSO, but also the various purposes for which the MMRRs were created.

In straining to undercut the Court's factfinding and convince the Court that Judge Braswell's Order is erroneous, Wellpath misconstrues what the law requires and what it protects, mischaracterizes and avoids large portions of the Order, and attempts to recast the strength of its evidence and credibility of its witnesses. Rather than citing any contrary controlling authority, Wellpath simply attempts another bite of the PSQIA apple, advancing modified arguments that ignore the large swaths of the Order wherein the Magistrate Judge's analysis focused not on submission to a PSO, but on the MMRRs' dual-purpose creation, concluding:

> Wellpath's collection, development, and maintenance of the MMRRs was not merely for the purpose of reporting to a PSO, but also for the purpose of fulfilling its obligations to the County. Its loose framework is a "kill two birds with one stone" approach that makes it impossible to separate the collection of information for the PSO, from the collection of information for the County. What's more, the documentary evidence, arguments, and testimony from Wellpath's own witnesses, convinces this Court that fulfilling its obligations to the County was actually the *primary* purpose of this framework. And in the case of Mr. Williams and Ms. Gibbs, submission to a PSO appears to be a distant afterthought.

9

Order at pp. 14-15.

The unambiguous intent of the PSQIA is "to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities," and "the Patient Safety Act does not permit providers to use the privilege and confidentiality protections for PSWP to shield records required by external recordkeeping or reporting requirements." HHS Guidance, 81 Fed. Reg. 32655-01, at *32656, 32657. In other words, in order for PSWP privilege to attach, the records must have been generated *with the intent* not to use them for any purpose other than reporting to a PSO. *See* HHS Guidance, 81 FR 32655, at *32656 ("[U]ncovering the purpose for which information is prepared can be a critical factor in determining whether the information is PSWP. Since some types of information can be PSWP or not depending upon *why* the information was assembled or developed, it is important for providers to be aware of whether information is prepared *for reporting to a PSO*.").

Wellpath's entire argument, that privilege was never waived through sharing with County personnel or lack of submission to a PSO, hinges on the inaccurate premise that PSWP privilege ever attached.[8] Defendant urges this Court to adopt the approach employed in the non-binding Orders in the *Hacking* and *Grayson*[9] cases, and insists that, in spite of express, nondiscretionary,

---

[8] Wellpath also raises a new argument in its Objection – asserting that Magistrate Judge Braswell's finding that the MMRRs are relevant to Plaintiff's *Monell* claim is clearly erroneous because there is no categorical exception to the PSQIA for *Monell* claims. But the Magistrate Judge did not hold that such an exception exists. Rather, her Order conforms with the many others around the country which stand for the "unremarkable proposition that a plaintiff pursuing a *Monell* claim is entitled to discovery beyond the circumstances of his or her own case," and that plaintiff should receive documents concerning instances of inadequate medical care for persons other than [plaintiff]." *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2022 U.S. Dist. LEXIS 168152, at *152-53, 156 (D. Md. Sep. 16, 2022); 2020 U.S. Dist. LEXIS 66670, at *39 (D. Md. Apr. 15, 2020).
[9] Wellpath attached the *Grayson* Order to its Motion for Protective Order. Thus, Magistrate Judge Braswell already had that Order in front of her when she found the evidence in this case merited a

10

contractual, policy, and accreditation obligations to create and share MMRRs, it did not share the reports with the County. *See* Doc. #120.1, pp. 6-9; #145.1, p. 17; Order, pp. 11-15; Objection, p. 9.

Unlike in *Hacking* and *Grayson*, there is ample evidence in the record here that the mortality reviews were created for dual purposes, including nondiscretionary recordkeeping and reporting requirements. Not only is Magistrate Judge Braswell's conclusion that Wellpath shared MMRR information with County employees through derivative reports such as Patient Improvement Plans sound, other evidence in the record (such as CQI minutes and Wellpath's own mortality review policy) support the reasonable inference that the mortality reviews themselves were actually shared with County personnel. Doc. #120.1, pp. 6-9; #145.1, p. 17; Order, pp. 11-15. And the fact that two and a half years passed before Wellpath reported two patients' deaths to the PSO not only means the MMRRs are not PSWP under the reporting pathway, but also, as expressly articulated in the Order, "severely undercut[s] the notion that Part III is 'assembled or developed…*for* reporting to a [PSO].'"[10] Order, p. 14.

Wellpath failed to carry its burden of demonstrating the PSQIA privilege applies to MMRRs. Magistrate Judge Braswell issued a very thorough and well-supported Order that considers not only waiver through sharing and submission to a PSO, but also the dual purposes for which the MMRRs were created. In short, there is no legal error in the Court's Order, much less clear error, and Wellpath's Objection should be denied outright as it has failed entirely to cite any controlling authority that is contrary to the Court's Order, or demonstrate clear error.

---

different outcome. *See* Doc. #117, p. 7; 117.3.
[10] Still conspicuously absent from the record is any evidence supporting Wellpath's assertion that *any* of the MMRRs were ever submitted to a PSO. *See* Doc. #120.1, p. 11-12; #145.1, pp. 139-141.

## IV.     CONCLUSION

Wellpath hangs its argument on the fact that it apparently always violated its own policies and contract obligations and ostensibly never shared these reviews with the County. Even if that were true, it would be precisely the abuse of the PSQIA protections the HHS warns against:

> HHS believes that most providers that engage with a PSO are doing so to further learning about patient safety and health care quality, consistent with the intent of the Patient Safety Act. Nevertheless, we are concerned about two ways that some providers may be attempting to misuse the Patient Safety Act protections to avoid their external obligations . . . First, some providers with recordkeeping or record maintenance requirements appear to be maintaining the required records only in their PSES and then refusing to disclose the records, asserting that the records in their PSES fulfill the applicable regulatory requirements while at the same time maintaining that the records are privileged and confidential PSWP. Second, some providers appear to develop records to meet external obligations outside of the PSES, place a duplicate copy of the required record into the PSES, then destroy the original outside of the PSES and refuse to disclose the remaining copy of the information, asserting that the copy is confidential and privileged PSWP. **The Patient Safety Act was not intended to give providers such methods to evade their regulatory obligations** . . . **We note that it would be improper to maintain records collected for external reporting purposes solely within a PSES because this scenario would be a misuse of a PSES**.

HHS Guidance, 81 FR 32655, at *32657-58.

But, as Magistrate Judge Braswell found, it simply is not true that these documents were only generated for a PSO or were always part of a PSES. Whether these records are privileged is, in part, a question of intent, and the evidence overwhelmingly demonstrates that Wellpath generated these reviews with the intent and for the purpose of meeting contract, accreditation, and policy requirements. Wellpath does not generate mortality reviews because it belongs to a PSO – it belongs to a PSO because it wants to hide the mortality review reports it is independently required to create.

12

Magistrate Judge Braswell correctly found Wellpath did not meet its burden of demonstrating that these documents are privileged and her well-supported finding should not be disturbed. For the foregoing reasons, the Court is asked to Order that Wellpath comply with the Magistrate's Order and provide the compelled documents by November 15, 2024.

Respectfully submitted this 7th day of November 2024.

>*/s/ Rachel Kennedy*
>Rachel Kennedy
>Anna Holland Edwards
>Erica Grossman
>Dan Weiss
>HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
>1437 High Street
>Denver, CO 80218
>rachel@hheglaw.com
>*Attorneys for Plaintiff*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

>*/s/ Rachel Kennedy*
>Rachel Kennedy
>HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
>1437 High Street
>Denver, CO 80218
>rachel@hheglaw.com
>*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2024, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

Nathan J. Whitney
Bryan E. Schmid
Steven Martyn
EL PASO COUNTY ATTORNEY'S OFFICE
nathanwhitney@elpasoco.com
bryanSchmid@elpasoco.com
stevenmartyn@elpasoco.com
*Attorneys for Defendant Roybal*

Brandon P. Hull
Jeremy B. Goldblatt
Lindsey W. Jay
OVERTURF, MCGATH & HULL, P.C.
bph@omhlaw.com
jbg@omhlaw.com
lwj@ohmlaw.com
*Attorneys for Defendant Roybal*

Christopher R. Jones
GORDON REES SCULLY MANSUKHANI
crjones@grsm.com
*Attorney for Defendant Silva*

Robin E. Daitch
Phillip E. Friduss
HALL BOOTH SMITH, P.C.
rdaitch@hallboothsmith.com
pfriduss@hallboothsmith.com
*Attorneys for Defendant Wellpath*

Paul A. Faraci
Charles Wood
FARACI LEASURE, LLC
pfaraci@faracileasure.com
cwood@faracileasure.com
*Attorneys for Defendant Lupo*

　　　　　　　　　　　　　　　　　　*/s/ Brooke Thiele-LaForest*
　　　　　　　　　　　　　　　　　　Brooke Thiele-LaForest, Paralegal